Statement of case.

ELIZABETH R. COGSWELL, Appellant, *v.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Respondent.

Whether the legislature can authorize a railroad corporation to maintain an engine-house, under circumstances, which if maintained by an individual would, by the common law, constitute a nuisance to private property without providing compensation, *quære.*

But if this should be conceded, nevertheless the statutory sanction which will justify an injury by a railroad corporation to private property without making compensation therefor, and without the consent of the owner, must be express or given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the legislature contemplated the doing of the very act which occasioned the injury; it may not be presumed from a general grant of authority.

Where the terms of a statute giving authority to such a corporation are not imperative but permissive, this does not confer license to commit nuisance although what is contemplated by the statute cannot be done without.

Defendant erected upon a lot adjoining a dwelling-house owned by plaintiff, an engine-house and coal bins for its road, and used the same in operating it. The smoke, soot, cinders and coal dust caused by such use filled plaintiff's house, rendering the air offensive and unwholesome and the house untenantable. *Held,* that the engine-house as used was a nuisance; that the authority conferred upon defendant by the act of 1848 (§ 6, chap. 143, Laws of 1848), to run its trains over the Harlem railroad was not a legislative sanction to the committing of such a nuisance; that an action was maintainable to recover damages and to restrain the nuisance; and that in such action it was no defense that it was necessary for defendant to have its engine-house located where it is, or that in the management thereof it exercised all practicable care.

*Radcliff* v. *Mayor, etc.* (4 N. Y. 195), *Bellinger* v. *N. Y. C. R. R. Co.* (23 id. 42), distinguished.

*Cogswell* v. *N. Y., N. H. & H. R. R. Co.* (16 J. & S. 31), reversed.

(Argued December 17, 1885 , decided October 5, 1886.)

APPEAL from judgment of the General Term of the Superior Court, of the city of New York, entered upon an order made December 12, 1881, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial without a jury. (Reported below, 16 J. & S. 31.)

This action was brought to recover damages to plaintiff's premises in the city of New York, alleged to have been caused

by the use on the part of defendant of an engine-house on adjoining premises, and to restrain such use.

The material facts are stated in the opinion.

*Lewis Johnston* for appellant. Even if the defendant could by comity lawfully purchase and take title to the land and erect the engine-house in question thereon as against the plaintiff, in so doing it acted beyond the scope of express legislative authority and subjected itself to liability, as in the case of a private citizen, to the plaintiff for all damages resulting to her from its acts in using the same. (*Purdy* v. *N. Y. & N. H. R. R. Co.*, 61 N. Y. 353; *Tracy* v. *T. & B. R. R. Co.*, id. 353; *C. & P. R. R. Co.* v. *Speer*, 56 Penn. St. 325; Laws of 1846, chap. 195; Laws of 1848, chap. 143.) The plaintiff is entitled to recover against the defendant upon the facts found by the court, if it be conceded that the defendant is not protected by legislative authority to construct the engine-house, etc., complained of by the plaintiff. (Wood's Law of Nuisances, §§ 495, 497, 498, 504, 505, etc.; *Catlin* v. *Valentine*, 9 Paige's Ch. 575; *Fish* v. *Dodge*, 4 Den. 311; *Brady* v. *Weeks*, 3 Barb. 157; *Smith* v. *Cummings*, 2 Pars. Sel. Cas. [Penn.] 92; *Dennis* v. *Eckhart*, 3 Grant's Cas. [Penn.] 390; *Wesson* v. *Washburn Iron Co.*, 13 Allen [Mass.], 95; *Sampson* v. *Smith*, 8 Simon, 272; *Whitney* v. *Bartholemew*, 21 Conn. 212; *Cartwright* v. *Gray*, 12 Grant's Ch. [Ont.] 399; *St. Helen's Smelting Co.* v. *Tipping*, 4 B. & S. 608; affirmed, 11 H. L. Cas. 642; *Prescott's Case*, 2 City Hall Rec. 161.) Assuming, however, that the defendant was duly authorized by legislative grant to acquire lands for the purpose and to construct the engine-house and shops for its sole use, independently of the New York and Harlem Railroad Company, as held by the court below, that court is in error in holding that the injuries complained of and found as facts by the court below are *damnum absque injuria*. (Wood's Law of Nuisances, §§ 759, 762; *Cooper* v. *N. B. R. R. Co.*, 35 Scott. Jurist, 295; *Commonwealth* v. *Kidder*, 107 Mass. 188; *Radcliff* v. *City of Brooklyn*, 4 Comst. 195, 198, 199, 200.; *N.*

*Y. E. R. R. Co.*, 22 N. Y. Week. Dig. 153 ; *Carhart* v. *Auburn Gas L. Co.*, 22 Barb. 297, 310, 312 ; *Brieson* v. *Long Island R. R. Co.*, 31 Hun, 112.) Authorizing a corporation to do such acts upon its own land as shall destroy or seriously impair the enjoyment of the adjoining land of a citizen is a " taking " of the land of such citizen within the meaning of the Constitution, and although such authority be given for " public purposes," if provision be not made for " compensation " to the party injured the authority is void. (*Pumpelly* v. *Green Bay, etc., Co.*, 13 Wall. 166 ; 74 N. Y. 516.) Private convenience is no excuse for infringing upon the rights of another under the tyrant's plea of " necessity." (*Truman* v. *London, Brighton & S. E. C. R. R. Co.*, L. R., 25 Ch. Div. 423 ; Cooley's Const. Lim. [5th ed.] 489, 657, 671 ; *B. & O. R. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317.)

*H. H. Anderson* for respondent. The burden of proving neglect was upon plaintiff, to show affirmatively, by a preponderance of proof, that a practical change in the construction of the structures could be made so as to lessen the annoyances complained of. (Shearm. & Redf. on Neg., § 12 ; Pierce on Railroads, 433, 437.) By comity between the States the defendant may hold land here. (2 Kent's Com. 283 ; *Merrick* v. *Van Santvoord*, 34 N. Y. 208 ; *McGregor* v. *Erie R. Co.*, 35 N. J. L. 115.) By the amendment to defendant's charter any possible question is set at rest. (*Boyce* v. *St. Louis*, 29 Barb. 650 ; The defendant has explicit legislative authority to take, hold and use the land in question for the purposes of its business, by virtue of its charter. (Conn. Pri. Acts, 1844, p. 59, fols. 310, 347 ; Laws of 1846, chap. 195 ; Conn. Pri. Acts, 1848, chap. 143, § 6 ; Conn. Pub. Acts, 1871, chap. 129, fols. 371, 387 ; Conn. Pri. Acts, 1873, p. 6, fol. 388.) By virtue of the General Railroad Law of New York (Laws of 1850, chap. 140, § 28 ; Laws of 1850, chap. 140, §§ 21, 49 ; as amended by Laws of 1869, chap. 237 ; Laws of 1877, chap. 224), railroad companies may properly acquire land for engine-houses, shops for the repair of locomotives, fuel yards, turnouts and side

tracks as necessary incidents to the operation of a railroad. (*In re N. Y. C., etc., Co.*, 77 N. Y. 248; *Purdy* v. *N. Y. & N. H. R. R. Co.*, 61 id. 353; *N. Y. & H. R. R. Co.* v. *Kip*, 46 id. 547. 552, 553; *State* v. *Mansfield* [3 Zabr.], 23 N. J. L. 510; *Williams* v. *P. W. & P. R. R. Co.*, 54 Penn. St. 103; *People* v. *Utica Ins. Co.*, 15 Johns. 358, 380; Pierce on Railroads, 149, 150, 484.) The location of the buildings and structures of the company is within the reasonable discretion of its managers. (*N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 549.) Where the grantees of a franchise have not exceeded the power conferred upon them, and when they are not chargeable with want of due care, no claim can be maintained for any consequential damages resulting from their acts. (Sedgwick on Damages, 110, 111, 112; Pierce on Railroads, 197, 431; *Sixth Ave. R. R. Co.* v. *Gilbert El. R. R. Co.*, 43 N. Y. Supr. 315; *Kellinger* v. *42nd St. R. R. Co.*, 50 N. Y. 206, 211; *Plant* v. *L. I. R. R. Co.*, 10 Barb. 26; *Boothby* v. *A. & K. R. R. Co.*, 51 Me. 318; *Richards' Appeal*, 57 Penn. St. 105; *Washburn* v. *Worcester*, 116 Mass. 458; *Frankfort T. P. Co.* v. *P. & T. R. R. Co.*, 54 Penn. St. 345; *Brand* v. *Hammersmith*, L. R., 1 Q. B. 130; L. R., 4 E. & P. App. 171; *Mersey Dock* v. *Gibbs*, 1 id. 112; *B. & So. A. Turnpike Co.* v. *C. & A. R. R. Co.*, 2 Har. 314; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42.)

ANDREWS, J. We are relieved by the findings of the trial judge, from any question as to the sufficiency of the evidence to establish that the engine-house as used by the defendant, constitutes, under the general rule of law, a private nuisance to the property of the plaintiff. The compromises exacted by the necessities of the social state, and the fact that some inconvenience to others must of necessity often attend the ordinary use of property, without permitting which there could in many cases be. no valuable use at all, have compelled the recognition, in all systems of jurisprudence, of the principle that each member of society must submit to annoyances consequent upon the ordinary and common use of property, provided such use is reasonable both as respects the owner of the property, and those imme-

diately affected by the use, in view of time, place and other circumstances. It is in many cases difficult to draw the line, and to determine whether a particular use is consistent with the duties and burdens arising from vicinage, or whether it inflicts an injury for which the law affords a remedy.

There is, however, upon the evidence and findings in this case, no room for doubt. The plaintiff, from 1870, has been the owner of a house on East Forty-sixth street, in the city of New York, used as a private residence, of the value, at that time, of at least the sum of $20,000. In 1872, the defendant, The New York and New Haven Railroad Company, purchased a lot adjacent to the lot of the plaintiff, extending from Forty-sixth and Forty-seventh streets, and bounded on the west by Fourth avenue, and erected thereon an engine-house and coal-bins for the use of its road, and since the year 1872, has used the engine-house for the reception, sheltering, storing, cleaning, oiling, dumping, repairing and firing of its locomotives, and the coal-bins for coaling the same. The engine-house was designed to accommodate eleven locomotives, and has eleven smoke-stacks extending above the roof to about the height of the third-story windows of the plaintiff's house. The court found that the engine-house and coal-bins were so constructed and used by the defendant as necessarily to cause damage from the use thereof to the plaintiff's dwelling-house, and that the coal-bins were unprovided with sufficient covering to prevent the dust of the coal from time to time stored therein and removed therefrom by defendant, from passing into and upon the plaintiff's land and dwelling-house. The court further found that there is now, and at all times since 1872, has been emitted from the engine-house and smoke-stacks, and from the defendant's engines in the engine-house, hurtful and offensive gases, smoke, soot, and cinders and coal-dust from the coal-bins, and that the same pour down upon, and are borne by the winds into and upon the plaintiff's dwelling-house and premises, filling the house with smoke, soot and cinders, injuring the furniture and clothing therein, rendering the air offensive and unwholesome, and the house uncomfortable and unhealthy as a habitation, and greatly reducing

the rental value of the premises.   The evidence fully justifies
the findings of the court.   It was shown that the house was
rendered untenantable, and could not be rented, although before
the erection of the engine-house, it had been rented for $2,500
a year; that the plaintiff's son became ill in consequence of
the unwholesome atmosphere, and that she was compelled to
remove him from the house on that account, and that the value
of the house had diminished one-half, a depreciation caused in
great part at least by the maintenance and use of the engine-
house.   In short, the engine-house as used, practically deprived
the plaintiff of the use of the house as a residence.   The de-
fendant did not physically eject her therefrom, but by filling
it with smoke and dust, and by corrupting and tainting
the atmosphere with offensive gases made life therein uncom-
fortable and unsafe.   It is scarcely necessary to cite authorities
to show that the engine-house as used, was, within every defi-
nition a nuisance, for which, as between individuals, an action
would lie for damages, and for which a court of equity would
afford a remedy by injunction.   (See *St. Helen's Smelting Co.*
v. *Tipping*, 11 H. L. Cas. 642; *Fish* v. *Dodge*, 4 Den. 311;
*Campbell* v. *Seaman*, 63 N. Y. 568.)   In *Radcliff* v. *Mayor*,
*etc.* (4 N. Y. 195, 198), a case which is often cited to sustain the
doctrine that consequential injuries to private property, from
the prosecution of public improvements do not give a right of
action, Judge BRONSON, referring to the general rule that a man
may do what he will with his own property, said : " He may not,
however, under color of enjoying his own, set up a nuisance
which deprives another of the enjoyment of his property."
The correctness of the findings of fact, made by the court,
is not questioned by the defendant.   The court placed its judg-
ment denying relief, upon the ground that the defendant was
a railroad corporation, authorized by law to acquire real estate
for an engine-house; that an engine-house at the point where
this engine-house was erected was necessary for the operation of
its road ; and that in the construction and use of the engine-house
and coal-bins, it had exercised all practicable care.   The finding
of law from these premises, was that " whatever damage has

resulted to the plaintiff or her property, by reason of the defendant's use and occupation of its engine-house and coal-bins, is *damnum absque injuria*."

It is manifest that if this judgment can stand a most serious injury is inflicted by the defendant upon the plaintiff for which she has no redress. Her premises are subjected to a burden in the nature of a servitude in favor of the defendant, which seriously impairs the value and enjoyment of her property. The principle upon which the court below proceeded, was that what the legislature has authorized the defendant to do, can neither be a public nor private wrong; in other words the legislature has authorized the maintenance of this nuisance by the defendant and the plaintiff must bear the consequences. The court below, in denying any relief to the plaintiff, of course assumed that the legislative authority and the act of the defendant thereunder resulting in flooding the plaintiff's premises with soot, smoke and noxious gases was not a taking of the plaintiff's property within the Constitution. We place our judgment in this case on the ground that the legislature has not authorized the wrong of which the plaintiff complains, and it is, therefore, unneccessary to determine whether the legislature could have authorized it consistently with the principles of the Constitution for the security of private rights, without providing for compensation.

The legislative authority under which the defendant seeks to justify the maintenance of the nuisance in question, is found in section 6, chapter 143 of Laws of 1848, entitled "An act to amend an act entitled 'An act relating to the New York and Harlem Railroad Company,' passed May 7, 1840." That section authorizes the defendant, the New York and New Haven Railroad Company, to enter upon and run its cars by the power or force of steam, animals or any mechanical power over the road of the New York and Harlem Railroad Company, from the point of junction of the two roads in Westchester county, to and into the city of New York, "upon such terms and to such point as has been or may hereafter be agreed upon by and between said companies." The defendant is a Connecticut corpo-

ration. Its road extends from New Haven in that State, to a point on the Harlem railroad in Westchester county in this State. It constructed the part of its road in this State, from the State line to its junction with the Harlem railroad at Williams Bridge, under the authority of the act of the legislature (Chap. 195 of the Laws of 1846). When the act of 1848 was passed, the two companies had entered into an agreement for the use by the defendant, of the tracks of the Harlem railroad from Williams Bridge to the city of New York, in which, among other things, the New York and Harlem Railroad Company agreed to furnish the defendant corporation, room for their engine-house at Thirty-third and Forty-second streets, not to exceed one-half of the real estate of the former company at that place, for which the defendant was to pay as provided in the agreement. It is claimed that the legislature has authorized the erection and use of the defendant's structure on Forty-sixth street. The only express authority conferred by the legislature is found in the sixth section of the act of 1848, above referred to. The authority conferred by that section, on the face of it, is simply an authority to the defendant to run its cars on the Harlem railroad to the city of New York upon such terms as may be agreed upon between the two companies. The most obvious purpose of this section was to confer corporate capacity upon the defendant to do that which, without legislative authority it could not do, viz., operate its road beyond the terminus fixed in the act of 1846, from Williams Bridge to the city of New York. But even this authority was not absolute. It could be exercised only in case and upon the terms of an agreement between the two companies for the use by the defendant of the tracks of the Harlem railroad. Upon this slender authority is based the claim of the defendant that the legislature has authorized the injury in question. The argument in brief is : The legislature has authorized the defendant to run its trains into the city of New York, over the Harlem road; it cannot do this without an engine-house conveniently located; the power to acquire lands for, and to construct an engine-house is, therefore, incidental to

the power expressly given; the company has exercised due care in its location, construction and maintenance; the annoyances suffered by the plaintiff are a necessary consequence of its use, and, therefore, the principle applies "that an act done under lawful authority, if done in a proper manner, can never subject the party to an action, whatever consequences may follow."

We shall pass without examination the question whether the authority given to the defendant to purchase land for an engine-house is implied in the power conferred in the sixth section of the act of 1848, to enter into an agreement with the Harlem railroad for the use of the tracks of that road, and to run its cars thereon to the city of New York. For the purpose of this case we shall assume that the general power conferred included the latter power as incident. It is no doubt a settled principle of the law that many things may be done by the owner of land, causing consequential damages to his neighbor, for which the law affords no remedy. The cases embraced within this rule are those either where what was done was in the lawful and reasonable use by an owner of land of his own property, or where the damages suffered, although by possibility attributable to the wrongful act of another, were too remote therefrom to justify the court in treating the one as the sequence of the other. The case before us belongs to neither of these categories. The defendant's engine-house, as maintained, was a palpable nuisance, causing special injury to the plaintiff, for which, by the general rule of the common law, she has a right of action. The defendant, however, does not rely for its justification upon the ordinary rule governing the rights of adjoining proprietors, but, as we have said, rests upon the claim that the legislature has authorized the acts of which the plaintiff complains, and has, therefore, made that lawful which otherwise might be unlawful, and has taken away any remedy which the plaintiff otherwise might have had. It is undoubtedly true that there are cases in which the legislature in the public interest may authorize and legalize the doing of acts resulting in consequen-

tial injury to private property, without providing compensation, and as to which the legislative sanction may be pleaded in bar of any claim for indemnity. Indeed such is the transcendent power of Parliament, that it is the settled doctrine of the English law that no court can treat that as a public or private wrong which Parliament has authorized, and consequently, as stated by BLACKBURN, J., in *Hammersmith, etc., Railway Co.* v. *Brand* (4 H. L. Cas. [Eng. & Ir. App.] 171), " the person who has sustained a loss by the doing of that act is without remedy, unless in so far as the legislature has thought it proper to provide for compensation." The legislative power in this country is subject to restrictions, but nevertheless private property is frequently subjected to injury from the execution of public powers conferred by statute, for which there is no redress. The case of consequential injuries resulting from street improvements authorized by the legislature is a familiar example. In *Radcliff* v. *Mayor, etc. (supra)*, which is a leading case, the corporation of Brooklyn laid out, opened, and graded a street, under authority contained in the charter, and the court held that in the absence of negligence, the city was not liable for consequential damages suffered by the plaintiff from the sliding down of his land, caused by the cutting down of the street, and thereby removing the lateral support. The court in its opinion declared that it had never been considered that consequential damages to private property, resulting from the opening and improving streets or highways, or other work of a public nature, could be recovered. The case has been frequently followed, and its authority completely established by repeated decisions in this State. It is an application of a principle well settled, that private interests must yield to the public welfare, but the case carries to the utmost limit the right of the legislature, for public reasons, to interfere with private property to the injury of the owner, without making compensation. The case of *Bellinger* v. *New York Central Railroad Co.* (23 N. Y. 42) is another case frequently cited to support the claim that a use of property authorized by the legislature, cannot, in the absence of negligence, constitute an actionable

injury. It was an action brought for the flooding of the plaintiff's land on the Mohawk flats, caused, as was charged, by the turning of the water of the West Canada creek out of its natural course, by an embankment constructed for the use of the railroad over the low lands west of the creek. The Utica and Schenectady Railroad Company (to whose rights and obligations the defendant succeeded), was created a corporation by chapter 294 of the Laws of 1833, with power to construct a railroad between Schenectady and Utica, " on the north side of the Mohawk river as far as the village of Herkimer." The charter authorized the directors to locate the line where it would be most advantageous for the road, and file a certificate of location, and the charter declared that the line so located should be deemed the line on which the road should be built. The company located its line on the creek at the point in question. It constructed a bridge across the creek five hundred feet long, and also left a water-way eighty-two feet wide in the embankment, for the passage of water in time of flood. The freshet which flooded the plaintiff's land, occurred at the time of the breaking up of the ice of the creek in the spring. It was shown that ice and water flowed and was forced upon the plaintiff's premises at the breaking up of the creek in 1799, and again in 1813, and on three occasions after the road was built, between 1835 and 1866. There was some evidence tending to show that the flooding in question was occasioned by the embankment, and the want of sufficient apertures for the passage of the water. The plaintiff recovered a verdict and the judgment was reversed by this court, on the ground of the rejection of evidence offered by the defendant, bearing upon the point whether the embankment and bridge were carefully and skillfully constructed. It was claimed by the counsel for the plaintiff that this was an immaterial issue. The court in its opinion, conceded that according to the general rule of law, if the structures of the defendant caused the injury, it would be liable irrespective of negligence, but held that as the company was authorized by statute to construct its road across the creek at the point where it was located, it was liable only for such consequences as were attributable to a failure to

exercise due care and skill in executing the statute authority. The case of *Bellinger* v. *New York Central Railroad Company* is perhaps the strongest case to be found in our reports, of the application of the doctrine that a statutory authority justifies acts which otherwise would give a right of action. But it will be noticed that it was a case where the line of the road was fixed by the charter. It was necessary in constructing the road on that line, to cross the creek on a bridge, and the low lands upon an embankment. The flooding of the plaintiff's premises was an unusual occurrence, and the evidence was very slight that it was caused by the structures of the defendant. It was under these circumstances that the court reached the conclusion that the damages suffered by the plaintiff were not recoverable in the absence of negligence on the part of the defendant in the construction of the road.

But the statutory sanction which will justify an injury to private property, must be express, or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the legislature contemplated the doing of the very act which occasioned the injury. This is but an application of the resonable rule that statutes in derogation of private rights, or which may result in imposing burdens upon private property, must be strictly construed. For it cannot be presumed, from a general grant of authority, that the legislature intended to authorize acts to the injury of third persons, where no compensation is provided, except upon condition of obtaining their consent. This construction of statutory powers, applies with peculiar force to grants of corporate powers to private corporations, which are set up as a justification of corporate acts to the detriment of private property. In the case of *Gardner* v. *Trustees of the Village of Newburgh* (2 Johns. Ch. 162), the chancellor granted an injunction to prevent the village of Newburgh from diverting the water of a stream, under an act of the legislature which authorized in general terms the taking of water for the use of the village, and which provided for compensation to the owner of land on which the spring or source of supply was situated,

but made no provision for compensation to the owner of land below, through which the stream passed. When this case arose there was no provision in the Constitution of the State, prohibiting the taking of private property for public use, without compensation. But the chancellor held that the making of compensation was an indispensable attendant of the exercise of the public right, and what is more material to our present purpose, he declared that the legislature could not have intended by the general powers conferred, to violate or interfere with private rights. The same principle is stated with unusual force of language by Chief Justice MARSHALL in *United States* v. *Fisher* (2 Cranch, 390). He says : " Where rights are infringed, where fundamental principles are overthrown, where the general system of the laws is departed from, the legislative intention must be expressed with irresistible clearness to induce a court of justice to suppose a design to effect such objects." What may be a sufficient statutory sanction for acts which injuriously affect general public rights or individual property is illustrated by cases which hold that an authority to construct a railroad and use locomotives thereon, takes away any remedy by indictment or private action, for such consequences as necessarily result from the use of locomotives, such as noise, vibration, etc., although no compensation is provided. (*Rex* v. *Pease*, 4 Barn. & Adol. 30; *Vaughan* v. *Taff Vale R. Co.*, 5 Hurl. & Norm. 679 ; *Hammersmith R'y Co.* v. *Brand, supra.*)

There are two recent English cases which apply with great distinctness the principle that a statutory sanction cannot be pleaded in justification of acts which by the general rules of law, constitute a nuisance to private property, unless they are expressly authorized by the statute under which the justification is made, or by the plainest and most necessary implication from the powers expressly conferred. These are the cases of *Hill* v. *Managers of the Metropolitan Asylum District* (L. R., 4 Q. B. Div. 433 ; *S. C.* on appeal, 6 App. Cas. 193), and *Truman* v. *London & Brighton Railway Co.* (L. R., 25 Ch. Div. 423). The case of *Hill* v. *Managers of the Metropolitan Asylum District* was an action for damages, and for

an injunction to restrain the use of a small-pox hospital, established by the defendants under direction of the poor law board, under authority of the Metropolitan Poor Act of 1867. The act of Parliament authorized the erection of asylums for sick, infirm and insane paupers in Metropolitan asylum districts in London, to be designated by the poor law board, and authorized the purchase, leasing or fitting up of buildings for that purpose, and the act referred to small-pox patients as among the class of persons to be provided for. The managers under the direction of the poor law board, erected a hospital for small-pox patients near premises of the plaintiff. The jury found that the hospital was a nuisance occasioning damage to the plaintiff. The court on the hearing granted an injunction, and the case was appealed to the House of Lords, where it received great consideration, and the judgment was affirmed. The defendants justified under the act of Parliament. The judges pronouncing opinions, conceded that according to the settled doctrine of the English law, if Parliament had expressly authorized the construction of the hospital upon the very site where it was located, its use in the manner and for the purpose contemplated, could not be restrained by injunction, except in so far as it was negligent, although such use should constitute a nuisance at common law, and no compensation would be due in respect of injury to private rights, unless provided for in the act. But it was held that the statutory sanction sufficient to justify the creation of a nuisance, must be express; that the particular land or site for the hospital must have been defined in the act, or, as held by one of the judges, it must appear that the act, while defining certain general limits, could not be complied with at all without creating a nuisance, and that the erection of the hospital at the particular place was made imperative. In the House of Lords, opinions were pronounced by Lord Chancellor SELBORNE, Lord BLACKBURN and Lord WATSON, all concurring in substantially the same view. Lord WATSON said: "If the order of the legislature can be implemented without nuisance, they cannot, in my opinion, plead the protection of the statute; and on the other hand, it is insufficient for their

protection that what is contemplated by the statute cannot be done without nuisance, unless they are also able to show that the legislature has directed it to be done. Where the terms of the statute are not imperative, but permissive, when it is left to the discretion of the persons empowered to determine whether the general powers committed to them shall be put into execution or not, I think the fair inference is that the legislature intended that discretion to be exercised in strict conformity with private rights, and did not intend to confer license to commit nuisance in any place which might be selected for the purpose."

The case of *Truman* v. *London & Brighton Railway Company* was also an action for damages and for an injunction to restrain a nuisance created by the maintenance by the defendant of cattle-yards at its station at East Croyden. The defendant was authorized by its charter to purchase lands in such places as it should deem eligible for the purpose of providing station yards for loading and unloading cattle, etc. It purchased lands for that purpose adjoining its East Croyden station but near the dwelling of the plaintiff. The court found that the company acted *bona fide* in selecting the site and conducted the business with all practicable care, but also found that it created a nuisance to the plaintiff and granted the injunction. The case arose after the decision in *Hill* v. *Managers of the Metropolitan Asylum District*, and was decided upon the principles there laid down. The court construed the charter as not conferring express authority upon the company to locate the cattle-yards at the place in question. It is manifest that these cases, if well decided, completely answer the defense in the present case. (See, also, *Queen* v. *Bradford Nav. Co.*, 6 B. & S. 631; *Atty.-Genl.* v. *Colney Hatch Lunatic Asylum*, L. R., 4 Ch. App. 147; *Hooker* v. *N. H. & N. Co.*, 14 Conn. 146; *S. C.*, 15 id. 312.)

The authority conferred upon the defendant by the sixth section of the act of 1848, to run its trains over the Harlem railroad, was not, however broadly construed, a legislative sanction to commit a nuisance upon private property. The authority expressly given was not absolute, but conditional upon

obtaining the consent of the Harlem railroad. It could not be known by the legislature that the building of an engine-house would necessarily interfere with private rights. However necessary it may be for the defendant that its engine-house should be located where it is, this constitutes no justification for the injury suffered by the plaintiff, nor is it any answer to the action that it exercises all practicable care in its management. It may have the right, which it claims, to acquire land by purchase for the accommodation of its business, but it must secure such a location as will enable it to conduct its operations without violating the just rights of others. Public policy indeed requires that in adjusting the mutual relations between railroad companies and individuals, courts should not stand upon the assertion of extreme rights on either side, but in this case the facts leave no room for doubt that the plaintiff has suffered a substantial and unauthorized injury.

The case of *Baltimore & Potomac Railroad Co.* v. *Fifth Baptist Church* (108 U. S. 317) fully supports the conclusion we have reached in this case, and the able opinion of Mr. Justice FIELD in that case vindicates the right of private property to protection against substantial invasions under color of corporate franchises.

The judgment should be reversed and a new trial ordered. All concur.

Judgment reversed.