Beckwith, Ch. J.
The respondents own a building and a lot of land situated on the northerly side of Water street in the city of Buffalo, and they complain that the appellant, in constructing its railroad through Water street under a permit of the common council erected a stone wall between five and six feet high and an embankment of the same height in the street and across the front of the respondents’ premises, and thereby took the possession and occupancy of the respondents’ easement in the street, or some portion thereof, to the absolute and permanent exclusion of the respondents.
The appellant contends that it has not taken any property or interest in property belonging to the respondents, but that it "built its railroad in the street with the consent of the city given by a resolution of the common council, and that the wall and embankment were occasioned by a change in grade in the street made necessary in order to carry the railroad at proper height over Commercial slip, a waterway and part of the Erie canal, and that consequently the wall and embankment were not an unlawful exclusion of the respondents from the enjoyment of their easement.
*732 The territory of the state of New York, except in limited, unsettled districts, is crossed by innumerable roads and highways, which are established or preserved by an exercise of the legislative power for the public use and public benefit. They are among the most important of the institutions belonging to' modern civilization. Without them society could not exist. In England they were for the common use of all the king’s subjects, and in this country, where people are sovereign, all the inhabitants have an equal or the like right to advantages of travel afforded by them. Every man has the right, rather than a privilege, of travel-ling over them. It is what I will call a personal civil right, belonging to his personal liberties as a citizen or inhabitant of the state. It is a right annexed to his person and does not give him the least property interest in the highway, nor in the ground.under the highway, nor in the air above it.
These highways are established and altered and possibly may be discontinued by the legislature in the exercise of the power and discretion derived from the people. The power of the legislature to alter and discontinue roads and streets ought to be exercised for the public good, the greatest good to the greatest number. The personal right of the citizen spoken of is the right simply to use the highways that at any time are found within the state. This personal civil right which belongs to him as one of the inhabitants of the state exists the same whether he owns or does not own lands adjoining a highway. So far as that right goes, the legislature directly or by delegation may change the highways and alter their grades as the ]3ublic good requires, without legal injury to any man even though he be the owner of land abutting on a highway the grade of which is changed. And so far as such personal liberty or right is concerned it may so change the grade that an adjoining individual lot owner may be cut off from all opportunity for direct entry upon the highway. And such an alteration of the grade of a street or highway may so far be held lawful, without a resort to the legal fiction that at the original taking of the land for highway purposes compensation was made which covered by contemplation all possible changes of grade, which in a thousand instances is not the fact, but upon the principle which lies at the bottom of most of the political ordinance of this country, that the convenience of the few must give way to the wants of the many. But the whole theory of the legality of measures which impose burdens and losses upon individuals is that they are in fact so imposed, in the judgment of the legislature, for the public good, and not the specific good of other individuals, or specified persons, natural or corporate.
But in addition to the personal right spoken of as belonging to an individual as a citizen or an inhabitant of the state, that is, the right of free locomotion on the public roads, the owner of a lot of land abutting on a highway or public street has another peculiar right connected with his ownership of the lot of land and connected with the highway which is a proprietary right It has been recognized by the courts of this state and several other states of the union; by the legislatures of many of them, and by the *733 •courts of England. It was determined in the Story case to be a proprietary right, an easement in the street or highway attached to the estate or ownership of the abutting lot of land or to the land. It is held to be property which cannot be appropriated to the use of the public without compensation.
The right attaches to every parcel of land in the state which .abuts on a highway, and every man in the state is concerned as owner, tenant or occupant in the preservation of the right. The principle of the right is as general and extensive and as much entitled to state regard as the aggregate of the personal rights of the inhabitants to travel on the public roads, called the rights of the public. Generally speaking, all the movements of people upon the public roads end in adjacent pieces of land as termini. Roads have connection with the safety of the state, but are created mainly for the better business and social communication of the 'occupants of the contiguous soil. The rights of the public in the highways are said to be superior to the rights of individuals as .abutting owners, but in the quality of their importance they are not superior. But the peculiar right of the lot owner is something different from the mere right to go out from his premises upon the street and 'return from the street to his premises, for those are things which he may do by virtue of and in the exercise ■of that civil right which he holds in common with all the inhabitants of the state. What then is the quality and what are the dimensions of that peculiar proprietary right which belongs to him by virtue of his ownership of the abutting lot of land ? It would seem to be something given from necessity or justice for the sake of the continual beneficial enjoyment of his estate. The beneficial use of his property, which is the thing of value for which a man pays a consideration when he buys a parcel of land, ■extends within the lines of the highway, and embraces, as was well settled by the Story case, the light and air of heaven, and that other something which has been called access. As remarked, that easement of access cannot be the mere right of going out from his home or place of business upon the street and returning "therefrom upon his own land, which he may do by virtue of his personal liberty.
But does not the right of access mean a certain convenience in the use of his property with respect to the rest of the world ? If the land owner is a trader, a hotel-keeper, a manufacturer, is not his easement somewhat commensurate with the uses to which his property is devoted? “An abutting owner necessarily enjoys certain advantages from the existence of an open street adjoining his property which belong to him by reason of its location and are not enjoyed by the general public, such as the right of free access to his premises and the free admission and circulation of light and air to and through his property.” Lahr v. Met. El. R. Co., 104 N. Y., 291; 4 N. Y. State Rep., 340.
Public roads are created for the business and social reciprocity •of all those whose dwellings and establishments everywhere border upon them. The easement or right of access would seem to include the opportunity for a man’s customers to come to his place *734 of business without unreasonable hindrance or interruption. A property devoted to business is of little value when business is-turned away by obstructions and barriers. In cities, especially, buildings as places of business are erected on the marginal line of the street. I suppose that is lawful. The customs of the age sanction such construction, and consequently sanction the reasonable use of some portion of the street in front of the premises,, and sometimes perhaps beyond, Original H. Collieries Co. v. Gibb, L. R., 5 Chan. Div., 713, for business transactions. Express wagons may drive up and stand a reasonable time to unload or receive merchandise. Coaches and carriages may stop there to-set down or take up passengers. Callanan v. Gilman, 107 N. Y., 360; 12 N. Y. State Rep., 21. Friends and customers may go-into and out from his house without hindrance, except so far astliey may be delayed by the legitimate public use of the street. The owner may'stand his teams and wagons in the street in proximity with his land a reasonable length of time, in a reasonable-manner, and, as I take it, may occupy a portion of the street, reasonably, convenient for his purposes. And I take it to be a general rule that this access is broad enough for the beneficial enjoyment of his property; that if his place of business is situated so as> to invite trade and custom from the opposite side of the street, or from places on the street beyond in either direction, such patronage ought not to be turned away from him by obstructions put upon his front. This view of the nature of an abutting owner’s easement in the street, or his right of access, seems to be supported by a number of English cases. Fritz v. Hobson, L. R., 14 Chan. Div., 542; Lyon v. Fishmongers’ Co., L. R., 1 Appeal Cases, 662; Original H. Collieries Co., supra.
The various privileges which may be exercised, and the various things which may be done in a public highway by virtue of a lot owner’s easement are often spoken of as though performed under the authority of the public right, that is, the same right which every man enjoys when he walks or drives on a public thoroughfare. And so in some cases the" question whether an abutting land owner has sustained actionable damage from something done in the street has been made to depend on the inquiry whether that right which is held in common with .all the people of the state, the public right, has been infringed. But the law under which that right is exercised is the law of motion, and would not suffer things to be done by a mere traveller upon the-street, without reference to adjoining premises, which might lawfully be done in connection with the easements. Whatever the correct rationale of the abutting owner’s right of action may be, it seems to be established that he has an easement in the public: street which is property and which cannot be taken, even for public use, without compensation. That there is a distinct easement connected with the ownership of land fronting on a. street is recognized by numerous American as well as English cases. Branahan v. Hotel Co., 39 Ohio St., 333; Story v. New York Elevated R. Co., 90 N. Y., 122; Lamm v. Chicago, St. Paul M. & O. R. Co., 43 Alb. Law Jour., 71.
*735 While it is true that the courts hold on to the ancient common law rules of somewhat arbitrary character, when the king, the state, the government, or whatever other name may be given to that image of the people’s power, was of more importance than all the individuals who make up the people, the doctrine that the power of the legislature is so unlimited that it may change the established grade of streéts and highway, without the least regard to the circumstances of abutting owners, or the amount of damage that may be done to them as individuals for the public benefit, they nevertheless generally recognize the natural justice there is, in proper cases, of making a suitable compensation. “ There are, undoubtedly, many cases where serious damages are done to abutting owners upon a street by altering the grade thereof, and the legislature, having regard for private rights, should generally make some kind of adequate provision to compensate such persons, specifying and regulating the mode of estimating and paying their damages; and it is believed that such provisions are contained in many of the city charters.” Ottenot v. The N. Y., L. & W. R. R. Co., 28 N. Y., State Rep., 483; Rhodes v. v. Cleveland, 10 Ohio, 159; Hooker v. Northampton, 15 Conn., 319.
It was said by Peckham, J., in the Robes case, 121 N. Y, 516; 31 N. Y. State Rep., 828:
“ Assuming that the plaintiff had no title whatever to the land in the street through which the defendant laid its rails and ran its trains under legislative and municipal authority, I think it clear that prior to the decision of this court in the Story case, 90 R. Y., 122, he had no cause of action against the defendant based upon any illegal taking of the plaintiff’s property or easement by defendant.” Without denying that it is the law that an ordinary change of the grade of a highway may be made when demanded by the public interests without occasioning legal damage to abutting owners, yet it seems to be true that legislatures and courts everywhere recognize the justice of making compensation when .abutting owners are specially damaged in excess of the inconvenience sustained by lot owners generally. There are cases, now and then, of special damage, where the propriety of compensation appeals to every man’s sense of justice. What reason is there for seeking to broaden the application of the common law rule respecting the king’s highway so as to prevent, in cases of special injury, the doing of plain justice to abutting lot owners ? When the question is whether a thing done for the public benefit is a violation of a private right of property, whether a construction is an occupancy of a private easement to the exclusion of the owner, what reason is there for securing public exemption by an arbitrary and unreasonable application of a maxim of the common law? Whether a thing done is an occupancy of private property to the exclusion of the owner, or only the exercise of a public power, depends often on an interpretation of the fact, its consequences, and its relation to the general purposes for which a power has been exerted in the public interests, and its relation to private interests. If the fact is essentially a private injury and would be a *736 legal injury unless it were a necessary consequence of the exertion of a power for the public benefit, it may be inquired whether the-fact has an essential relation to the public object. Cogswell v. N. Y., N. H. &. H. R. Co., 103 N. Y., 21; 3 N. Y. State Rep., 56. As in the Story case, in one respect, the posts set in the "street to-uphold the defendant’s railroad structure were regarded as within the public use, and, in another view, as a dispossession of the plaintiff from his easement. The irresponsible power of the state-government, which enables it to alter highways and change their established grades, is a power which relates to the public easement, the right of the inhabitants of the state generally, and should not be expanded in theory so as to be made a cover for -taking private property without compensation.
The question remains whether or not the erection of the embankment in Water street mentioned in the complaint was simply a lawful change of the grade of a street which consequently gives no cause of action in favor of an abutting owner whose-easement has been destroyed or abridged.
The plaintiffs’ premises are situated on the northerly side of Water street,-in which the defendant’s railroad is constructed. The premises are bounded on the easterly side by Commercial street, on the west by Maiden Lane, and on the southerly side by Water street. Occupying the whole lot up to the line of the-street is a four story brick building which is used as a store and residence. Commercial street extends southerly across Water street and terminates a little beyond in Buffalo Harbor. Water street before the embankment was made was sixty-six feet wide. The embankment is twenty-four feet wide and at the line of Commercial street is five feet, nine inches high, and extends westward: by a gradual descent past the plaintiff’s premises and across Maiden-Lane and touches the original level of the street 300 feet west of the plaintiff’s property. The embankment is supported laterally by solid perpendicular stone walls, which extend across the front of the plaintiff’s premises, and across the entrance of Maiden Lane. The embankment cuts off the original passage from the plaintiff’s property through Commercial street to the harbor, although a graded approach constructed by the defendant in Commercial street makes a way over the embankment in Water street. Between the perpendicular stone wall on the northerly side of the-embankment and the sidewalk in front of the plaintiff’s building is a space only 8-J to 9 feet wide, which is the only carriage-way left on the Water street side of the plaintiff’s premises. By the charter of Buffalo the sidewalk is to be used only by persons on foot. The railroad embankment is twenty-four feet wide on top, and the defendant’s railroad tracks are laid upon its surface. The resolution of the .common council gave the defendant permission to lay a double track road. It is palpably plain that by the embankment the easement, the access, which the plaintiffs formerly enjoyed in connection with their abxxtting premises has been substantially taken away from them. The wagon way left is not wide enough to allow two teams meeting to pass each other. It does not admit of the plaintiffs using the street for the delivery *737 of fuel or merchandise without interrupting the public travel on the street subject to which their easement is held. The space is insufficient for the convenient standing of wagons or the loading or unloading of goods. The embankment cuts off patronage from the street in front of the plaintiffs’ premises. It is a deprivation in a large degree of the substantial benefits of access from Water street. Their property interest in the street is almost wholly taken away from them.
It is claimed by the defendant, nevertheless, that the plaintiffs are not entitled to compensation because the deprivation of property which they have sustained has resulted incidentally from a lawful exercise of the legislative power of the state, causing a, change in the street for the public benefit.
It. is asserted also that recent decisions of the court of appeals have settled the claims of the parties in favor of the defendant. It. does not appear to us that those decisions necessarily dispose of this case for several reasons. We do not think the decisions referred to are to be understood as overruling the Story case. "It would seem from what appears in the Ottenot case as reported, and the briefs used on the argument, that it was assumed or conceded, rather than decided, that there was a legal change of the grade of Water street when the defendant’s tracks were laid, and that consequently the provisions of the charter of Buffalo giving an abutting owner a remedy by an application to the common council for any damages sustained from a change of grade was the plaintiff’s only remedy.
Section 2 of title 9 of the charter, Laws 1870, Oh. 519, requires that the grade of a street shall be established and described, and that the description of such grade and all alterations thereof shall be recorded and that “ no street shall be worked until the grade thereof is established and recorded.” ' Those provisions contemplate the establishment, whether originally or by alteration, of a legal grade, for the benefit of the public, by an adjudication of the common council as to the requirements of the public convenience. Sections 7 and 9 of the same title of the charter provide for the grading of streets in the sense of working them. Then § 17 provides that when the city shall alter the recorded grade of any street the owner of a lot fronting thereon may within one year claim damages for such alteration by presenting his claim to the common council. I think the charter limitation applies only where the grade has been established or - changed by the common council by a formal determination. The legislative power over highways is supposed to be exercised for the public good. It is a consistent check on the delegated power of the common council that before the grade of a street shall be actually altered the common council shall first formally determine and describe the new grade. Where private rights are to be affected the power should be exercised within its strict limitations.
I do not think the provisions of the charter providing a remedy were intended to apply to every change.in a section of a street or in a of the soil, even if made under some resolution of the *738 council, nor to changes which are incidental to the performance of some other public work. The actual surface of a street often remains for a long time unconformed to the established grade. Erecting an embankment in a street does not itself alter the legal grade. A provision of the charter empowers the common council to give a permit to railroad companies to lay their tracks in, along and across the streets of the city. It seems to me that means the surface of the streets as they exist. But if the power to allow railroad tracks to be laid in the streets carries with it the incidental power to impose conditions as to the crossing of other streets, the height of bridges and their approaches, and the tracks are laid, the conditions should be deemed to be accepted as such, with the legal liabilities incident to the construction of a track in conformity to them. Such a permit would be a protection to the company for any supposed interference with the public easement, but would leave private rights of property untouched. Upon the authorities, the laying of a railroad track upon the surface of a street violates neither the public easement nor the rights of abutting owners, and the laying of a track subject to the provisos supposed would not necessarily subject the company to liability for damage to individuals. But to call a bridge, a trestle, an embankment constructed under such a permit, a change of grade, where no change of grade has been officially determined,, seems to be both fallacious and unjust, although it is like much of the legal reasoning founded on the postulates of the common law by which impunity is given for the violation of private rights and the destruction of private property. In this case the common council passed a resolution purporting to allow the defendant to build an embankment in Water street, such as its engineers might deem practical, to cany its track over the canal, according to a plan of its own and subject in some degree to the approval of the city engineer. The gradient of the embankment westward from Commercial street across the front of the plaintiffs’ premises and beyond was not definitely fixed, nor was it established and recorded. The embankment in Water street was allowed by the common council, and was constructed, in fact, as a bed for the defendant’s tracks. It is true that the surface was required to be paved and is called a portion of the street, but it cannot be said that the embankment was made for the improvement of the street as a public thoroughfare.
The retaining walls were put in the street for the purpose of holding up the bed of the railroad and for no other purpose, and those walls occupy portions of the street as permanently and exclusively as they would if. earth had not been filled in between them. They are as effectually obstructions in the street for the benefit of the defendant in its private character as a business corporation as the posts set under the elevated railroad in Uew York. The walls are there dispossessing the plaintiffs from their easement. They abridge and take away the lawful access connected with the plaintiffs’~land, and although the plaintiffs might, by going a roundabout course, become travelers on the highway, and in the exercise of that right, which they hold in common *739 with other members of the community, might drive up and down the embankment, yet they could not therefrom use their easement, could not have access to their premises. The fact remains that the walls are an absolute, permanent and exclusive occupancy of a portion of the proprietary interest of the plaintiffs. The fact that the general public may travel on the embankment does not alter the fact that the walls erected by the defendant in the street are a deprivation of the plaintiffs’ rights of property therein, for their easement consists in the facilities afforded by the street in front of their premises, it has been said, to its whole width, for the useful, profitable and pleasurable enjoyment of their adjacent property. If the elevated road in New York had been planked on top so as to accommodate persons on foot, the posts below would not have been any less the obstructions in the street that they were held to be. It was right to allow the railroad tracks to be laid in the street, but it is not right to deprive the plaintiffs of their property by a legal fiction, nor by a strained interpretation of the fact so as to make that a mere consequence of a lawful change of grade which more rationally and more justly is a taking of private property for public if not private use. When the thing done is equally susceptible of being regarded as the mere incidental result of the exercise of a lawful power for the public benefit, and as being an unlawful taking of private property, justice requires the construction that will give protection to private property, for why should an individual give up his property for the benefit of the public without compensation.
In another view the embankment is little more than an elevated railroad track over the canal. The defendant was permitted by the common council to lay a double track along the embankment. It is possible to drive teams that are accustomed to the cars along the embankment when not occupied by trains; but an embankment only twenty-four feet wide with double tracks upon it is not a place that answers the legal requirements made of the city by its charter to keep its streets in a safe condition for travel. The ordinary traveler, driving upon the embankment, who should receive an injury from the fright of his horse and from the cars could hardly maintain an action or save himself from non-suit for contributory negligence, for a man may not put himself in a place of danger simply because he has a technical right of way.
For further considerations of this aspect of the case I will refer to the opinion of Titus, J., in Jeaume v. The N. Y., Lackawanna & Western Railway Company, decided at this term.
In my opinion the judgment appealed from should be affirmed.