LEON ABBETT and Others, Appellants, *v.* EMMA A. BLOHM, Respondent, Impleaded with CHARLES.A. BLOHM.

*Judgment entered on an unauthorized appearance — when it will not be set aside.*

The court will vacate an unauthorized appearance and set aside a judgment entered thereon only where the application is made promptly and the other party has lost no rights by the delay.

A judgment entered February 14, 1891, will not be vacated on the motion of one of the judgment debtors, made April 7, 1900, upon the ground that the summons was never served upon her and that the attorneys who appeared for her did so without her knowledge or authority, where it appears that two of the judgment creditors, who were material and competent witnesses to establish the cause of action, have died; that their books have been destroyed, and that if the judgment were set aside the Statute of Limitations would be a bar to a recovery, and also that the attorneys who interposed the alleged unauthorized appearance are able to respond in damages.

APPEAL by the plaintiffs, Leon Abbett and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of June, 1900, vacating a judgment rendered on the 24th day of February, 1891, against the defendants, and canceling the record thereof as to the defendant Emma A. Blohm.

*Henry Schmitt,* for the appellants.

*Thomas C. Whitlock,* for the respondent.

O'BRIEN, J.:

The judgment sought to be assailed was entered upon the 24th day of February, 1891, and the order to show cause why it should not be vacated was dated April 7, 1900, and the order vacating it was entered on the 11th day of June, 1900. The ground of the motion was that the defendant Emma A. Blohm had never been personally served with the summons and complaint and did not authorize the attorneys to appear for her. The action against the defendant and her brother was for legal services rendered by the firm of Abbett & Fuller during the years 1885 and 1886; and it is conceded that the summons and complaint were duly served upon the brother in the month of May, 1888; that thereafter a notice

of appearance was given by Messrs. Hurd & Grim for both defendants, and an answer was interposed which was verified by the brother. In February, 1891, the case having been reached upon the calendar, upon default of the defendants an inquest was taken and judgment was entered against them.

In addition to swearing that she was never served with the summons and complaint, the defendant alleges that she neither retained nor authorized any attorney to appear for her; that the appearance of Messrs. Hurd & Grim was without her authority, knowledge or consent, and that she never had any knowledge of the action or the judgment till March, 1900, when, having made a contract to sell some property which she had in the borough of Brooklyn, the judgment was disclosed in the course of an examination of title upon a search made by a title company.

In her affidavit the defendant says: "Deponent does not intend to criticise the action of Messrs. Hurd & Grim in serving the notice of appearance and answer for her, as she is fully aware that they would never intentionally exceed their authority, as no firm practicing in the city of New York stood higher than they, but deponent believes that the summons and complaint herein, was served upon her brother, Charles A. Blohm, and upon him only, and that he, without her knowledge, consent or authority, went to Messrs. Hurd & Grim and requested them to appear for both, and that they, knowing the said Charles A. Blohm and knowing that deponent was his sister, naturally believed that he was authorized to make such request, and for this reason served the notice of appearance and answer in her behalf." She further states that she has not been on friendly terms with her brother since the year 1886.

Her affidavit is supplemented by one showing the entry in the register of the attorneys who appeared in the action, and Mr. Grim, one of them, avers: "That deponent's firm was retained by the defendant Charles A. Blohm, to appear for both defendants; that deponent's firm was not personally retained by Emma A. Blohm, nor was she seen or any transaction had with her, but that all matters pertaining to this action were transacted through the defendant Charles A. Blohm." This latter affidavit is to be construed in the light of one subsequently made by Mr. Grim, in which he says: "I do not wish to be understood by the affidavit so made that my

firm of Hurd & Grim had no authority to appear in the action for Emma A. Blohm, on the contrary, my firm would not have appeared for her unless there was some authorization by her. We were authorized by her in some way to appear for her, but I do not remember the details."

Upon the question of the extent of the brother's authority to retain lawyers for the defendant, there is submitted a counter affidavit showing that in two actions brought prior to the one here involved, and wherein she and her brother were also defendants, the latter employed attorneys to appear for her, and his authority in those actions is not disputed. Serious doubt is thus created as to whether the brother was entirely without power to authorize the appearance for her; but, if we pass that question and assume that she conferred upon him no such right, and that the appearance was unauthorized, the question is then presented whether, upon the other facts shown, the motion to vacate the judgment should, at this late day, have been granted.

We will further assume favorably to defendant that *laches* are not to be imputed to her. But it is made to appear by the years which have elapsed since the judgment was entered, during which both of the senior members of the firm of Abbett & Fuller have died, and their books have been destroyed; that the effect of setting aside the judgment would be to prevent any recovery, even though a just claim existed against her, not alone because the evidence could not now be procured, but also because the Statute of Limitations would be a bar. And it is admitted that the attorneys who appeared for the defendant are reputable and responsible lawyers, both of whom are still living and can respond should she be able to prove that they put in an appearance for her without authority.

The question we are thus called upon to determine is neither new nor unsettled, for in a long line of cases the rule to be applied, though sometimes criticised, has been firmly adhered to so far as domestic judgments are concerned, and in the Encyclopædia of Pleading and Practice (Vol. 2, p. 685) a copious list of authorities is given and a summary of them is thus stated: "Taking some early English cases as their guide, they hold that an appearance by attorney, whether for the plaintiff or the defendant, if there be no

collusion, may be recognized by the adverse party as authentic and valid; that when an attorney takes upon himself to appear, the court, in case of a domestic judgment, looks no further, but proceeds as if the attorney had sufficient authority and leaves the party to his action against such attorney if he is financially responsible. * * * And the rule that in the case of a strictly domestic judgment a party not served, but for whom an unauthorized appearance was entered by an attorney, may not on these grounds assail the judgment for want of jurisdiction, when it comes in question collaterally, does not apply where the party was at all times a non-resident and out of the jurisdiction; the court may on motion in the action grant relief either by setting aside the judgment or by staying proceedings and permitting the party to come in and defend."

The leading case in this State of *Denton* v. *Noyes* (6 Johns. 297) is thus summarized in *Vilas* v. *Plattsburgh & Montreal R. R. Co.* (123 N. Y. 441), " that a domestic judgment rendered by a court of general jurisdiction against a party who had not been served with process, but for whom an attorney of the court had appeared, though without authority, was neither void nor irregular. The doctrine of the prevailing opinion in that case encountered a vigorous opposition from one of the judges at the time, and it is not too much to say that the reasoning upon which it rests has frequently been criticised by judges, and the justice of the rule denied. But it has been followed and must be regarded as the law of the State. (*Hamilton* v. *Wright*, 37 N. Y. 502; *Brown* v. *Nichols*, 42 id. 26.) "

In *Vilas* v. *Plattsburgh & Montreal R. R. Co.* (*supra*), after reviewing the authorities, the court observed: " We are bound, under our decisions, to follow the doctrine of *Denton* v. *Noyes* in cases where it is strictly applicable. It is as to such cases *stare decisis.* But we are not disposed to extend the doctrine of that case to cases fairly and reasonably distinguishable." Then the court proceeds to distinguish the two cases upon the facts appearing that in the one before it the attorney upon whose unauthorized appearance the judgment was entered was dead, and, at the time of his death, his estate was entirely inadequate to pay the judgment; that the judgment was rendered against the moving party and two others jointly, which judgment, upon the appeal of the latter, was

reversed as to them; and that it was not shown that the delay in making the motion had changed the status of the plaintiff.

Many of the decisions on this subject will be found collated in Bliss' Annotated Code (3d ed. vol. 1, p. 42), where a summary of them as to the effect of appearance by attorney is thus given: " The authority of an attorney who appears for a party is presumed. If no rights have been acquired, the court, on prompt application, will set aside an unauthorized appearance. Otherwise, the injured party will be left to redress against the attorney."

Upon the facts, we think that this case cannot be distinguished from that of *Denton* v. *Noyes* (*supra*) and that at this late date, as correctly urged by the appellants, a refusal to follow it would be to upset the entire and long-established practice, sustained by a uniform line of decisions, and destroy the credit that must, under the rule in that case, be given to such notices of appearance by attorneys and by the court. To which we might add that the result of the application of any other rule would be not only to affect many titles to real estate but to render unsafe and insecure rights acquired under judgments in actions wherein there was no personal service. Where it is shown that the appearance of the attorney is unauthorized, the court undoubtedly has power in its discretion to vacate the appearance and set aside the judgment, but it is only proper to exercise that authority where the application has been made promptly or the other party has lost no rights by the delay. In this case notice of appearance for the defendant was served on the plaintiffs in 1888. An answer was interposed by her attorneys, and because of the interposition of the answer the trial of the action was postponed for two and a half years, and the plaintiffs finally succeeded in obtaining a judgment by default in May, 1891. Since that time two partners of the plaintiffs who were familiar with the case and who would have been material and competent witnesses to establish the plaintiffs' cause of action, have died. All the books and papers containing the items of services rendered for the defendants for which judgment was recovered have been destroyed. It is apparent, therefore, that, owing to this delay, the rights of the plaintiffs would be substantially prejudiced by requiring them now to litigate a claim upon which they recovered judgment in 1891. For this reason we do not think that the case is one where the defend-

ants should be permitted to try the action. If, in fact, the appearance of the attorneys was unauthorized, the defendants have a perfect remedy against them, and should be required to adopt that remedy.

The order appealed from, therefore, should be reversed, with ten dollars costs and disbursements, and the motion to vacate the judgment denied, with ten dollars costs.

VAN BRUNT, P. J., RUMSEY, PATTERSON and MCLAUGHLIN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.