(67 App. Div. 25.)

## BATES v. HOLBROOK et al.

(Supreme Court, Appellate Division, First Department. December 13, 1901.)

CONTRACTORS—PUBLIC WORK—NUISANCE—DAMAGES.

> Defendants, as subcontractors in the construction of the underground railroad in New York, have constructed a large building on a public park, directly opposite and a short distance from plaintiff's hotel, and in such building have placed and are operating a large amount of machinery for compressing air, and other purposes of such work. The building and machinery were located on the public square without objection by the public officers, or express legislative authority, and it is the most convenient and economical position therefor while such work is in progress. The building could be removed and machinery located and operated elsewhere without detriment to the work, otherwise than to make it more expensive to defendants. Such location and operation of the building and machinery have been and are a great injury to plaintiff, reducing his income from the rent of his rooms more than one-half. *Held* that, though the work in which defendants are engaged is of a public nature, they have no right to so conduct it as to unnecessarily injure plaintiff, that they may make a greater profit, and for so doing they should respond to him for the damage so occasioned.
>
> Patterson, J., dissenting.

Appeal from special term, New York county.

Action by Benjamin L. M. Bates against Frederick Holbrook and others. From a judgment for defendants (71 N. Y. Supp. 1013), plaintiff appeals. Reversed.

Argued before HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles F. Brown, for appellant.

James A. Dunn, for respondents.

INGRAHAM, J. The plaintiff is the lessee and proprietor of a hotel called the "Everett House," at the northwest corner of Fourth avenue and Seventeenth street, in the city of New York, and has been in possession thereof and conducting a hotel therein since the month of July, 1894. The lease under which the plaintiff is now occupying the premises is dated May 1, 1896, for the term of 10 years. The defendants are copartners, and, as subcontractors, are engaged in the construction of the portion of the underground railroad in the city of New York, extending from Great Jones street to Thirty-Third street; and, to facilitate their work under their contract, they have erected upon what is a portion of Union Square, in the city of New York, on the south side of Seventeenth street, between Fourth avenue and Broadway, and directly in front of the plaintiff's hotel, buildings in which are placed boilers, forges, air compressors, machinery to furnish power, and other appliances for the prosecution of the work under their contract. The action is brought to restrain the defendants from maintaining this building and using it for the purpose for which it was constructed, and to recover the damages sustained by the plaintiff in consequence of the erection and use of the said building. The court upon the trial dismissed the complaint, and from the judgment entered therein the plaintiff appeals.

73 N.Y.S.—27

The defendants' contract for the construction of this section of the underground railroad is dated March 8, 1900. The period within which the defendants are required to complete their work does not appear from the record. The contract between the defendants and the principal contractor was introduced in evidence but it is not printed. There was evidence, however, that the work would be completed within the time provided for by the contract, and it is asserted in the respondents' brief that that time was within two years of the trial, which was in May, 1901. The structure complained of seems to have been erected in July, 1900. By an act passed April 5, 1832 (being chapter 89 of the Laws of that year), there was included within the park called "Union Place" all the land bounded east by the easterly line of Fourth avenue, west by the westerly line of Broadway, south by the southerly line of Fourteenth street, and north by the northerly line of Seventeenth street. All of Seventeenth street from Fourth avenue to Broadway is thus within the area of Union Square. It would also appear that, at some time prior to the commencement of this action, Seventeenth street, opposite the plaintiff's premises, had been widened so that there was included within the paved portion of the roadway, extending from Fourth avenue to Broadway, a plot of land something over 100 feet south of what had been the southerly side of Seventeenth street, and this portion of Union Square had been used as a portion of the driveway of Seventeenth street. As there was no street open between Fourteenth and Seventeenth streets from Fourth avenue to Broadway, this widened street would appear to have been necessary for the accommodation of the public. After the defendants obtained their contracts, they inclosed a portion of what had been used as Seventeenth street, in front of the plaintiff's hotel, 100 by 120 feet, with a high board fence, and within this space erected buildings wherein were placed boilers, forges, air compressors, machinery to furnish power, and appliances for the prosecution of the work under their contract; and this space is also used as a storage place for tools and machinery. The power generated within this inclosure is compressed air, which is conducted to the work in lines of pipe, and the structure is so erected as to leave in front of the plaintiff's hotel a paved carriageway of the same width as is the carriageway of Seventeenth street east of Fourth avenue and west of Broadway. In this carriageway, however, there is a line of street railway. The court below found that the construction of the Rapid Transit Railroad, in which these defendants are engaged, is an important public work; that—

"The work is not performed negligently, carelessly, or unskillfully, or in an unreasonable manner. No private rights of the plaintiff are trespassed on by these defendants. The defendants are not liable for the consequential damages resulting to the plaintiff from the construction of the work in which they are engaged. The erection and maintenance of the structure in front of plaintiff's hotel by the defendants have resulted, and will during their continued maintenance result, in loss and injury to the plaintiff. The use of the public property by the defendants is merely temporary, being limited by the time necessary for the completion of the work upon which the defendants are engaged. The resulting annoyance to the plaintiff is temporary. The defendants occupy the public property under proper author-

ity. The work could be conducted practically as well and with less injury to this particular plaintiff if the defendants' plant were placed elsewhere, or was subdivided into a number of smaller plants distributed along the line of the work. The aggregate damage, however, produced thereby, would not be lessened, and the loss which now falls upon the plaintiff would be cast upon others. The defendants are engaged upon a public work under public authority. The necessary and proper place for the construction of the operating plant were matters to be determined by the contractor and the public authorities, under whose supervision and direction the work was to be performed. The proper authorities determined that the plant should be erected in front of plaintiff's premises. They acted in good faith, and their exercise of discretion is not open to review. The plaintiff is injured, but is not entitled to either damages or an injunction."

There are several propositions of law involved in this finding that are disputed by the plaintiff, and their determination seems to be the substantial question presented upon this appeal. That this structure and use of Union Square has caused serious injury to the plaintiff's premises and the business there conducted is found as a fact by the court, and does not seem to have been disputed by the defendants upon the trial. The plaintiff testified that for the first six months of the year 1900, from the 1st of January to the 1st of July, the rental received by him from the rooms in his hotel was between $55,000 and $60,000, and the rental received by him from these rooms during the preceding year, 1889, was about $96,000; that the rental from July 1, 1899, to January 1, 1900, was between $55,000 and $60,000; the rental from the rooms from the 1st of July, 1900, to the 1st of January, 1901, the period during which this structure existed, was less than $25,000; and from January 1, 1901, to May 1, 1901, the rental received was less than $18,000. These were the receipts from rentals of rooms, disconnected entirely with the receipts from the restaurant; the business being so conducted that the rooms were rented separately. Thus the amount received for rent of the rooms after the erection of this structure, and in the commencement of the work upon this subway, was reduced to less than one-half what it had been immediately preceding the commencement of this work. The effect of the erection of this structure and the use to which it has been put appears from the evidence of persons who had occupied rooms in the hotel fronting upon Seventeenth street, and appears to have been a substantial appropriation of the plaintiff's property, and a very serious damage to the business that he conducted upon the premises. That a person occupying and leasing property can thus have his business destroyed, his property rendered unavailable and useless, by the public appropriation of the streets and parks upon which his property abuts, without remedy, causing the serious damage here shown, for the benefit of the community, or an individual contractor engaged in a public work, would seem to be a grave injustice to the individual, imposing upon him a great burden and loss for the assumed benefit of the public. If the conclusion follows that by the enforcement of established rules of law no one is responsible therefor, we can give the plaintiff no relief, however unjust such a result would be.

There is no dispute as to the general proposition which the court below seems to have held applicable to this case, and which is stated

by Chief Justice Bronson in the case of Radcliff's Ex'rs v. Mayor, etc., 4 N. Y. 195, 53 Am. Dec. 357, as follows:

"If the statute under which the defendants acted is constitutional, it is settled that they are not answerable to third persons, whatever damage they may have suffered. Indeed, it is absurd to say that public officers may be liable to an action for what they have done under lawful authority, and in a proper manner. Private property cannot be taken for public use without making just compensation to the owner; and a law which authorizes the taking without providing for compensation, must be unconstitutional and void. But laws which authorize the opening and improving of streets and highways, or the construction of other works of a public nature, have never been held void because they omitted to provide compensation for those who, though their property was not taken, suffered indirect or consequential damages. The loss which they sustained has always been regarded as damnum absque injuria."

But of this case it has been said that it "carries to the utmost limit the right of the legislature for public reasons to interfere with private property to the injury of the owner without making compensation." See Cogswell v. Railroad Co., 103 N. Y. 19, 8 N. E. 537, 57 Am. Rep. 701. It is also undoubtedly the law that contractors who are engaged by competent public authorities in carrying out improvements lawfully authorized, or in the erection or construction of works of a public nature, are not responsible for the consequential damages sustained by others in the careful and proper performance of their contracts. Benner v. Dredging Co., 134 N. Y. 156, 31 N. E. 328, 17 L. R. A. 220, 30 Am. St. Rep. 649. Whether or not this rule would apply to a case where the immediate result of the performance of a contract for a public improvement is to throw upon the adjacent land gases, smoke, steam, and odors that render such adjoining premises untenantable, or produce serious and prolonged injury and damage, or where in the prosecution of such public work the operations are so concentrated that all of the injury or burden occasioned by the public work is thrown upon one piece of property, are questions which I do not find to have been discussed or settled by any controlling authority. Undoubtedly in the prosecution of this work the incidental damage occasioned by the excavation in the street through which this railroad is built is an injury for which the law affords no compensation. However unjust it may seem that the owners of property upon the street through which this road is to run will have to be for years cut off from the use of the street in front of them, and thus sustain serious damage, for the benefit of those who reside in distant parts of the city, or those who wish to use this road when completed, no relief can be awarded them. It seems to me that the foundation of this rule is necessity. The public officers and contractors engaged in executing such a public work are employed in the performance of a public duty imposed upon them by law. It is the damage that is necessarily caused in the performance of that work that is damnum absque injuria, as to impose a liability for such damage would seriously interfere or absolutely prevent the improvement that the public interests require. As to the methods adopted in carrying out such a public work, where no specific directions are given by the legislature, I can find no authority for saying that the contractors are at liberty to select such a method as

will cause serious damage, where other methods could be adopted which would avoid causing such damage. "It is the incidental damage necessarily occasioned by the performance of a public work legally authorized for which no relief can be given; and the fact that a method is adopted which causes damage to an individual not necessary in the performance of the work, but which is adopted merely because it is more convenient or economical to the contractor, is not an injury for which the contractor is relieved from responsibility." The use of municipal property, with the consent of the municipal authorities, by a contractor doing work under a contract with public officers, which use if by a private owner would be a nuisance, is not less a nuisance because of the character of the work that the contractor is doing, when such a use is not necessary to the proper performance of the public work, and certainly not when there is no express legislative authority for the particular use to which the municipal property is put. "The statutory sanction which will justify an injury to private property must be express, or must be given by clear and unquestionable implication from the powers expressly conferred, so that it can fairly be said that the legislature contemplated the doing of the very act which occasioned the injury. This is but an application of the reasonable rule that statutes in derogation of private rights, or which may result in imposing burdens upon private property, must be strictly construed. For it cannot be presumed, from a general grant of authority, that the legislature intended to authorize acts to the injury of third persons, where no compensation is provided, except upon condition of obtaining their consent." Cogswell v. Railroad Co., 103 N. Y. 21, 8 N. E. 541, 57 Am. Rep. 701.

That this use of Union Square would be a nuisance if owned and used by a private owner is established by the evidence, is in effect found by the court below, and is in line with repeated adjudications of the courts of this state. Campbell v. Seaman, 63 N. Y. 568, 20 Am. Rep. 567; Cogswell v. Railroad Co., supra; Abbett v. Blohm, 54 App. Div. 427, 66 N. Y. Supp. 838; Baltimore & P. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739. In this latter case Mr. Justice Field says:

"That is a nuisance which annoys and disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable to him. For such annoyance and discomfort the courts of law will afford redress by giving damages against the wrongdoer, and, when the cause of the annoyance and discomfort are continuous, courts of equity will interfere and restrain the nuisance. * * * The authority of the company to construct such works as it might deem necessary and expedient for the completion and maintenance of its road did not authorize it to place them wherever it might think proper in the city, without reference to the property and rights of others. * * * Whatever the extent of the authority conferred, it was accompanied with this implied qualification,—that the works should not be so placed as by their use to unreasonably interfere with and disturb the peaceful and comfortable enjoyment of others in their property."

Lester v. City of New York, 79 Hun, 479, 29 N. Y. Supp. 1000, which is relied upon by the defendants, does not apply. That was an action against the city of New York to recover the damages sustained by reason of the action of a contractor engaged in the con-

struction of the aqueduct. It seemed that the city acquired a plot of land for the purpose of constructing the aqueduct which joined a lot of land owned by the plaintiff; that the contractor entered on the plot of land thus acquired by the city for the purpose of executing the contract, and erected certain forges, sheds, steam engines, drills, and other kinds of machinery for the purpose of sinking a shaft to facilitate the construction of the aqueduct, and the operation of this machinery affected the rental value of the plaintiff's property. The plaintiff presented his claim to the comptroller, who refused to pay it, and then brought an action to recover the damages sustained in consequence of this use of the property by the contractor. The complaint was dismissed upon the trial, and on appeal to the general term that dismissal was sustained, apparently upon two grounds: First, that such a temporary use of the property as was shown in that case afforded no ground for action by an abutting owner who sustains consequential damages by temporary annoyances not negligently caused, and not amounting to trespasses; and, second, that in an action arising under the aqueduct act it was held that the aqueduct commissioners were not the agents of the city, and that it had no control over the manner of doing the work. And upon appeal to the court of appeals (150 N. Y. 578, 44 N. E. 1125) this judgment was affirmed. The opinion of the general term was not adopted, but the affirmance was placed upon the ground that the plaintiff established no cause of action on the merits. In that case there had been acquired by the aqueduct commissioners a plot of ground for building the aqueduct, and it was upon the plot of ground upon which the aqueduct was being constructed that the machinery which, from the report of the case, it must be assumed was necessary for the proper construction of the aqueduct, was placed and used. This case would be analogous if the defendant had placed a steam drill or machine in the cut excavated for the Rapid Transit road, necessary for the proper excavation, and was using it without negligence; and we may well assume that under those circumstances the city of New York would not be responsible for the damages sustained by this use of the street in which the railroad was being constructed by the contractor.

There is no direct legislative authority for the placing of this building upon any part of Union Square. It is sought to be implied by the provisions of the rapid transit act, which, in effect, authorizes the public authorities to grant to such a corporation engaged in construction of the road temporary privileges to facilitate its construction; but there is nothing that could be construed as legislative authority to erect and maintain a public nuisance in one of the parks which would seriously injure the abutting property. There was nothing to prevent these contractors from obtaining a building in the adjacent portion of the city devoted to manufacturing business, where such a use would cause no serious damage to adjacent property, and there is certainly nothing to show that it was the intention of the legislature that the parks in the city of New York should be applied to this use which was not necessary to the proper and expeditious construction of the road. I can find nothing that justifies the defend-

ants in erecting upon a portion of this park a structure such as shown in this case, for the purpose indicated, which causes serious damage to the abutting property owners in addition to that imposed by the necessary use of the avenue through which the road is being constructed, because the use of this park without expense to them makes it more convenient and economical in the prosecution of their work than the use of other property at a distance from the work, where such an injury would not be occasioned. It has never been held, so far as I know, that the convenience of a contractor upon a public work as to the method of doing his work is alone to be consulted, and that the location by the contractor of the buildings and machinery for doing a public work is the exercise of a discretion which the courts cannot review. The testimony conclusively establishes that other methods could have been adopted by the defendants which would have relieved this plaintiff, so that there would not be imposed upon him all the damage occasioned by the generation of power for the use of drills upon this section of the railroad. The defendants' testimony is that some of the compressed air plants upon other sections of the roadway are located from one-half to three-quarters of a mile from the work. One of the defendants testified:

"I presume that it would have been possible to have gotten locations off of this work by paying enough for it. I know it could, if I paid enough for it. * * * It was a matter of economy to put it there. * * * I looked at a number of pieces of property. One of them is on Eighteenth street, where I now have a stable. Q. Why didn't you locate there? A. As I say, this place is more convenient, where I am; very much more; very much better."

Mr. McDonald, the principal contractor, testified that there was nothing impracticable in locating this particular plant of the defendants at a distance from the subway.

That it was more convenient and economical for the contractors to use a part of this public park immediately in front of the plaintiff's hotel may be conceded; but I cannot concur in the proposition that such concentration of the work at this particular point, causing the plaintiff the damage that he has sustained, is an act for which the defendants must escape liability.

It will be noticed that the statute authorizes the grant of "temporary privileges" to facilitate the construction of the road. It is doubtful whether such a phrase is sufficient to authorize the construction of a building in which are located machine shops, boilers, compressed air plants, and other appliances of this kind, which are intended to last during the whole period of the construction of the road. The contractor is expressly prohibited from acquiring the use or occupancy of the public parks or squares, except such as may have been designated for the route or routes of the railway, and except such temporary privileges as the proper authorities may grant to facilitate the construction of the work. The phrase "temporary facilities" contemplates the right of piling material while it is being used in the construction of the railway, or the placing of temporary engines, when necessary, in the immediate location of the work, and other use of that kind, rather than the erection of a building to be used during the whole construction of the work; and these tempo-

rary privileges are only such as the proper authorities may grant. It does not appear that the rapid transit commissioners were authorized to grant use of the public park to the contractor, to be used in doing the work under the contract, or that, if by the act under which they were appointed any power was granted to them to authorize such a structure, they have authorized it. The chief engineer of the rapid transit commission testified that the occupation of the premises on Union Square for the power plant of the defendants was with the approval of the rapid transit commissioners. Such approval was not evidenced by a resolution. No formal authority was given. The commissioners took no vote upon it, and all that appears was that there was a discussion among the members upon the subject, from which the chief engineer assumed that the members, individually or collectively, were in favor of contractors using this portion of Union Square. To justify an appropriation of a park, a more formal action was required by the commissioners than that here indicated, if they had any authority to grant such permission.

Upon the whole case, my conclusion is that the use to which this square has been put, namely, the erection of a building which was to be permanent during the time required for the completion of the road, was not authorized by the rapid transit act, but, on the contrary, was distinctly prohibited, as such a use of the park was not a "temporary privilege," within the meaning of such act, and that this use of the park and the erection of this building and machine shop was not an incidental or proper use required for the proper construction of the subway; that the defendants were liable to the plaintiff for the injury that he sustained, and the plaintiff was entitled, upon the facts proved, to an injunction restraining this use of the defendants of the portion of the park or street opposite his premises. It is unnecessary here to suggest what judgment the special term should give upon the new trial which must be ordered. As, however, the municipal authorities have not objected to this use of the park, and the plaintiff is enforcing his individual right to protect his property, considering the situation as it exists, and the nature and condition of this work, it might well be that the special term would be justified in suspending the issuance of an injunction upon condition that the defendants pay to the plaintiff the damages that he has sustained by reason of this unauthorized structure in the park, and the damage that would be caused by it during the period that the structure remains there, upon the principle applied in Crocker v. Insurance Co., 61 App. Div. 226, 70 N. Y. Supp. 492.

Whether or not the special term would be justified in giving such a judgment against the defendants upon the facts of the case as they should appear upon the new trial, we think the judgment appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except PATTERSON, J., who dissents.