---

(50 Misc. Rep. 417.)

MT. MORRIS BANK v. NEW YORK & H. R. R. CO. et al.

(Supreme Court, Special Term, New York County. May, 1906.)

INJUNCTION—DENIAL—PUBLIC INCONVENIENCE—REMEDY IN DAMAGES.

Plaintiff sued to restrain the placing of six transmission cables on the girder of the viaduct in Park avenue in the city of New York, constituting a part of a system designed for the operation of trains by electricity over the viaduct. The question raised by the complaint related only to the location of the conduits for the cables, and the affidavits were conflicting as to whether it was practicable to locate the cables in any way below the upper surface of the girder or under the viaduct. The work was prosecuted under a law prohibiting the operation of steam locomotives after a certain date, and the property along the line of the viaduct would be greatly benefited by the work. The damages to plaintiff could be readily ascertained. The complaint did not allege that the conduits would damage the fee or impair the rental value of the premises, but alleged that they would constitute a nuisance and produce irreparable mischief, and that defendant had never acquired the right to maintain such additions to its structure. Defendant's loss and public inconvenience from an injunction would largely outweigh any possible damage to plaintiff by withholding it. *Held*, the injunction should be denied.

Action by the Mt. Morris Bank against the New York & Harlem Railroad Company and the New York Central & Hudson River Railroad Company. Motion for an injunction denied.

Hatch & Clute, for plaintiff.
Albert H. Harris, for defendants.

CLINCH, J.  The plaintiff applies, under section 603 of the Code of Civil Procedure, for an order enjoining defendants from constructing any addition or extension to or upon or projection from the viaduct erected in front of the premises of the plaintiff, on the northwest corner of Park avenue and 125th street, and from doing any work in the construction or placing of pipes, conduits, wires, arms, brackets, or supports outside or over said viaduct, and from using said pipes, wires, or extensions for electric current, unless the same be so placed or constructed as to be confined wholly within the line and below the level of said viaduct as heretofore constructed.  The present viaduct was erected in Park avenue in or about the years 1896 and 1897, under the provisions of chapter 339, p. 694, of the Laws of 1892, as amended by chapter 594, p. 715, of the Laws of 1896.  At the time the viaduct was erected steam locomotives were, and they now are, the motive power for operating trains upon it.  The plaintiff brought an action for an injunction and damages against the defendants, based on the maintenance of this viaduct and the operation of trains thereon.  The trial of that action resulted in an injunction, with alternative fee damages and rental damages.  By chapter 425, p. 996, of the Laws of 1903, the defendants were prohibited, after a certain period mentioned in the act, from using steam as the motive power for the propulsion of trains upon the viaduct, and were specifically authorized (section 4, p. 1001), to use electricity for such motive power.  After the passage of this act the railroad companies commenced to make such changes as were required, by the substitution of electricity as the motive power for operating passenger trains, and this included changes and additions to the viaduct in front of plaintiff's premises.  About January or February, 1906, before the commencement of this action, negotiations were commenced for the settlement of all claims of plaintiff involved in its first action.  These negotiations were ended by the delivery on March 8, 1906, in consideration of $22,321.92 paid to plaintiff by defendants, of an instrument by which the plaintiff granted and conveyed to the defendants and to their and each of their successors, licensees, and assigns forever, "the right to maintain and operate, in the same manner as at the present time, the railroad viaduct structure, station building, platform and appurtenances erected and now existing in Park avenue, in front of the premises of the plaintiff hereinbefore described, under and pursuant to chapter 339 [page 694] of the Laws of 1892, and chapter 594 [page 715] of the Laws of 1896, and the acts heretofore passed amendatory thereof and supplemental thereto, including the right to operate trains, locomotives, and cars upon the present structure by such motive power as the said companies, or either of them or their or each of their successors, licensees and assigns, are now authorized and required by law to do," and also released unto the said companies "all the damages heretofore occasioned during the ownership of the above-described premises by said Mt. Morris Bank, including all damages to the rental or usable value of said premises occa-

100 N.Y.S.—35

sioned by the acts of the said New York Central & Hudson River Railroad and its contractors in the erection of the station building and platforms and the alteration of said permanent viaduct in front of said premises." By the same instrument the plaintiff released "unto the said railroad companies all damages which may hereafter be occasioned to the said premises by reason of the construction, maintenance and operation of said railroad, viaduct, structure, station and appurtenances as now constructed, maintained, and operated by reason of the operation of trains, locomotives and cars thereon by any motive power now authorized or prescribed by law."

While negotiations for this release were proceeding, defendants were engaged in the installation of an electrical system and had nearly completed the installation to within a short distance of plaintiff's property, and the plaintiff had abundant opportunity to see the proposed scheme of installation; but, so far as the papers submitted on the motion disclose, no inquiry was made by the plaintiff in respect to the proposed scheme, nor were any objections thereto made. This system calls for six transmission cables, each inclosed in a three-inch iron pipe, and the whole protected by movable coverings to permit the cables to be inspected and repaired. There are to be six transmission cables on the west exterior girder of the viaduct and six on the east exterior girder. These iron pipes are to be in horizontal layers of three pipes each, and the top of the pipes will be about 14 inches above the top surface of the girder and will occupy a space about 14½ inches in width. At intervals of about 12 feet there are to be wooden blocks four inches in thickness, 20 inches in width, placed traversely to the pipes, and through these the pipes pass and are held in position. The upper surface of the upper blocks is about 18 inches above the top surface of the girder. To assist in the support of these pipes and wooden blocks it is proposed to place an overhang along the westerly edge of the westerly girder; the upper surface of the overhang to be on the same level as the upper surface of the girder. There is now a gas pipe railing about 38 inches high on this westerly girder, which is to be removed when the system of pipes and blocks is put in position. It is against this erection 18 inches high and this overhang of 10½ inches that the plaintiff complains. The plaintiff and the defendants submit affidavits by electrical engineers and experts in which opposing views are expressed as to whether it is practicable to locate the transmission cables in any way below the upper surface of the longitudinal girder, either on the outside or inside thereof or under the viaduct itself.

It is not possible from the affidavits submitted for the court conclusively to determine whether the contention of the plaintiff or that of the defendants in respect to this matter is correct. The consummation of the work in which the defendants are engaged will be a great benefit to all the property along the line of the viaduct and will probably add to the enjoyment and value thereof. The work is prosecuted in response to a public demand therefor, ratified by the state Legislature in the enactment of chapter 425, p. 996, of the Laws of 1903, which prohibits, after the period mentioned in the act, the operation of trains by steam locomotives in Park avenue south of the Harlem river. The amount of damage done to the plaintiff's property by the placing in

position, as proposed by defendant, of its electrical system, can be quite as readily ascertained as was the damage complained of in its first complaint and for which it received $22,321.92. The necessity for such an arrangement of supply conduits as to permit their inspection readily is apparently conceded by the plaintiff, as is also the fact that the conduits must be installed upon or attached to the viaduct structure. The question which the plaintiff raises apparently has relation only to the location of the conduits. The complaint does not contain any allegation that the erection of the electrical conduits as proposed by the defendants will do any damage to the fee or rental or usable value of the plaintiff's premises, but alleges that the proposed additions will constitute a nuisance and will, unless restrained, "constitute a continuous trespass upon plaintiff's easements and property rights aforesaid, and the further construction or continuance thereof permanently or pendente lite will produce irreparable mischief to this plaintiff, for which this plaintiff has no adequate remedy at law, and the right to construct or maintain said additions to the structure has never been acquired by these defendants or either of them." The relief sought is injunctive. It is questionable whether, under its complaint, the plaintiff is entitled to an injunction. Brass v. Rathbone, 153 N. Y. 442, 47 N. E. 905; McHenry v. Jewett, 90 N. Y. 58. Even though the proposed improvements be without legal authority, and their erection be an evasion of the plaintiff's property rights, it would not be a proper exercise of the equitable power of the court to restrain the improvements. As was said in Knoth v. Man. Ry. Co., N. Y. L. J. Nov. 17, 1904 (affirmed 96 N. Y. Supp. 844):

"It is apparent that the strict enforcement of the remedy sought by the plaintiff for the invasion of her property rights would result in but slight benefit to her, but in great hardship and loss to the defendant and great inconvenience to the public. The plaintiff has appealed to the equity side of the court, and its decision must be framed upon equitable principles. It seems to be now well settled in this state that, even in cases where the defendant's unauthorized acts have resulted in a clear invasion of plaintiff's property rights, a court of equity will refuse to interfere by injunction where the loss to be suffered by the defendant, and the inconvenience to be suffered by the public, if the injunction be granted, will far outweigh any possible damage to be suffered by the plaintiff if the injunction be withheld. Crocker v. Manhattan Life Ins. Co., 61 App. Div. 226, 70 N. Y. Supp. 492; Riedeman v. Mt. Morris Elec. Light Co., 56 App. Div. 23, 67 N. Y. Supp. 391; Bates v. Holbrook, 67 App. Div. 25, 73 N. Y. Supp. 417, affirmed by Court of Appeals, 171 N. Y. 460, 64 N. E. 181."

For the reasons assigned the plaintiff's motion must be denied. Motion denied.