(54 Misc. 600)

## VACCARINI v. CITY OF NEW YORK.

(Supreme Court, Appellate Term. June 6, 1907.)

1. APPEARANCE—WAIVER OF OBJECTIONS—DEFECT IN PLEADING.
   The "city of New York," by appearing and submitting to the court's jurisdiction in an action against "the city of New York," condoned the mistake in the title.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appearance, § 146.]

2. MUNICIPAL CORPORATIONS—TORTS—MAINTENANCE OF CULVERT—LIABILITY OF CITY.
   Though a city does not construct a culvert, where it uses and maintains it as a part of its sewerage system, it is bound to use reasonable care to protect the public against danger arising from its negligent maintenance.

3. SAME—SLIPPERY PAVEMENT—LIABILITY FOR INJURY.
   A city is not liable for falls upon slippery asphalt pavement.

4. SAME—REMOTE CONSEQUENCES.
   Under the rule that one is liable only for the natural and probable consequences of a negligent act, a city is not liable for injury to a horse slipping upon asphalt pavement and getting its foot wedged in a sewer

culvert opening in the face of the sidewalk curb, 3 feet 8 inches long and 8 inches high above the street level; it not appearing similar accidents had ever occurred or that the city had notice of the likelihood of such an accident.

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Giuseppe Vaccarini against the city of New York. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and FITZGERALD and GOFF, JJ.

William B. Ellison (Theodore Connoly and Thomas F. Noonan, of counsel), for appellant.

Townsend & Kiefer, for respondent.

GOFF, J. There are three grounds of reversal urged upon this appeal: First, that the defendant city was not sued by its correct title; secondly, that if there is any liability it is chargeable to the rapid transit commission; and, thirdly, that negligence cannot be imputed to the city of New York.

On the first ground: It is true that the action was entitled incorrectly, but the "city of New York" appeared by its "counsel to the corporation" as attorney for defendant, entered upon and conducted the trial without objection, perfected its appeal, and for the first time raises the objection on appeal. It is too late. The plaintiff's mistake was condoned by the defendant voluntarily appearing in court and submitting to its jurisdiction.

On the second point: Even if the rapid transit commission did construct the culvert, it does not maintain it. The law declared by the cases cited was that the building of the subway was a public work of the state, performed under legislative authority, and that the city had no control over it. Carpenter v. City of New York, 115 App. Div. 552, 101 N. Y. Supp. 402; Halfelin v. McDonald, 96 App. Div. 213, 89 N. Y. Supp. 395. No matter who constructed it, the city used and maintained it as a part of its system of sewage, and it was bound to use reasonable care and diligence in protecting the public against any danger that might arise from its negligent maintenance.

On the third ground questions arise which are not free from difficulty, and, were it not that the weight of authority supports it in principle, I would on the facts of this case be inclined to give it my adhesion. The plaintiff and his witnesses testified through an interpreter, and from the meager and somewhat obscure case presented it is difficult to extract an intelligible statement of fact. Recourse must be had, therefore, to the testimony of defendant's witnesses, particularly for a substantial description of the culvert. There was no dispute as to these facts. The plaintiff, about 8 o'clock in the morning, was driving his horse and wagon, loaded with produce, through Bleecker street. The horse slipped upon the wet asphalt pavement, and in its struggles, in some unexplained manner, its left hind foot became wedged in the opening of the sewer culvert, where it remained for some hours, and

finally, in order to extricate it, the large stone over the opening of the sewer had to be broken and the horses's shoe pried off with a crowbar. The horse was disabled, and the justice rendered judgment for plaintiff, awarding damages in the sum of $150. This opening, called a "sewer culvert," was in the face of the sidewalk curb. It was made of cast iron, inserted under a large stone that formed the bed of the sidewalk, and was 3 feet 8 inches long and 8 inches high above the level of the street. In relation to the street it was vertical; its lower line being on a level with the street surface. Its course was inward and downward, and formed the mouth of the sewer through which the water from the street flowed. It was of a standard type used throughout the city, and no question was raised as to its adaptability for the purpose of its construction. There was no hole or break in the asphalt pavement, and it would have been "impossible" for a horse, walking on the street, to put his feet in this opening; and the only way that it could be done would be "sideways." It is a reasonable inference that for a horse to get in his feet "sideways" he would have to be lying down. There was no evidence that an accident of a similar nature had ever occurred before, or that defendant ever had notice that such an accident was liable to occur. Evidence was given that on some of the culverts in use in the city a bar was placed horizontally along the opening, thus reducing the space to about three inches on each side; but, owing to the liability of garbage gathering at the bar and preventing the flow of water, thus flooding the street, it was not considered useful or successful.

Was this opening of such dimensions, in such a place, and so situated as to be of itself dangerous, and to be constructive notice to the defendant of its dangerous character? The answer to this question is decisive of the case. "It is a well-settled principle of law that a party is only liable for the natural and probable consequences of his wrongful act or omission," and "where it appears that the consequences which flow from the particular act are remote and speculative no liability attaches." Beetz v. City of Brooklyn, 10 App. Div. 384, 41 N. Y. Supp. 1009. "And the law requires that the injury must so directly result from the wrongful act" (Id.) "that, according to common experience and the usual course of events, it might, under the particular circumstances, reasonably be expected" (Jex v. Straus, 122 N. Y. 293, 25 N. E. 478). "The city is not an insurer of the safety of persons (or animals) traveling its streets, nor is it bound to furnish an absolutely safe and proper highway under all circumstances." Hubbell v. City of Yonkers, 104 N. Y. 438, 10 N. E. 858, 58 Am. Rep. 522; Hunt v. Mayer, 109 N. Y. 134, 16 N. E. 320. "It is bound to exercise active vigilance toward keeping its streets in proper repair." Id. "The measure of its duty in this respect is reasonable care, and it is liable only for neglect to perform this duty." Beltz v. City of Yonkers, 148 N. Y. 70, 42 N. E. 401. The law "imposes upon municipal corporations the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care." 148 N. Y. 71, 42 N. E. 402. "Where the duty is simply of ordinary and reasonable care and caution, a failure to foresee and guard against an accident which has not occurred before, and which in its character is

not such as to naturally occur to prudent men to guard against, is not negligence." Kirby v. D. & H. C. Co., 20 App. Div. 479, 46 N. Y. Supp. 782. "That which never happened before, and which in its character is such as not to naturally occur to prudent men to guard against its happening at all, cannot, when in the course of years it does happen, furnish good ground for a charge of negligence in not foreseeing its possible happening and guarding against that remote contingency." Hubbell v. City of Yonkers, supra.

Applying the principles enunciated by these authorities, the city cannot be charged with negligence, unless it be shown to have failed in the exercise of ordinary care and prudence in maintaining its street in a safe condition and taking reasonable precautions to guard against an accident, the happening of which might have been foreseen or anticipated. The street was in perfect condition, and absolutely safe for man or beast to pass along. On that point no blame can attach to the city. Can blame attach to it because of the sewer opening? It was necessary to have such an opening. The sewage system of the city demanded it. It was of standard construction, in general use. It was not exposed on a flat surface, where a person or animal could step into it. This horse, in walking on the street, could never have placed his foot in it. In order to do so he had to lie down and plunge and struggle, and get his foot in "sideways." It may well be doubted that, if it was intended, it could have been accomplished. Such an accident was never known to have occurred before, and in all probability the chances are as a million to one against it ever occurring again. It was not by ordinary use of the street that the horse's hoof was caught, but by a most extraordinary happening, such a happening as may be imagined based upon common knowledge that, when a horse harnessed to a cart falls, the creature becomes almost frenzied in his efforts to extricate itself, and no doubt in this case the animal plunged and kicked until it wedged its hoof in the opening. It would be straining language to call this an ordinary occurrence. Most extraordinary is the proper characterization, and the law will not hold the city responsible for failing to take precautions against such a remote contingency and extraordinary occurrence. It is not against bare possibilities, but against reasonable probabilities, of accident that the city is bound to use care and caution.

It may be urged that, if the horse had not fallen, he would not have been in a position to thrust his hoof in the opening, and if the opening had not been there his hoof would not have been caught. True; but, if the falling of the horse was the primal cause, the city cannot be held responsible for that, for it is well settled that no liability attached as matter of course for falls upon slippery asphalt pavement. O'Reilly v. City of Syracuse, 49 App. Div. 538, 63 N. Y. Supp. 520; Kinney v. City of Troy, 108 N. Y. 571, 15 N. E. 728. But the falling on the slippery pavement cannot be held to be the proximate cause of the accident, for there is no relation of cause and effect; for "a proximate cause is one which is involved in the idea of necessity," and, "being given, the effect must follow." Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216. Certainly it did not follow as a "necessity" that, when the horse fell, he should wedge his foot in the culvert.

That was not the inevitable result of the fall, but was due to intermediate, unnecessary, and remote causes, which at best are speculative and conjectural. While the result of the accident may involve hardship to the plaintiff, yet the city on no declared principle of law can be held responsible.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GILDERSLEEVE, P. J., concurs. FITZGERALD, J., concurs in result.