ELIZABETH A. O'BRIEN, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

First Department, May 17, 1918.

Municipal corporations — negligence — liability of city for work done or authorized by Public Service Commission — injury to pedestrian by stepping on gas pipe temporarily obstructing street — contributory negligence — duty of city to safeguard pedestrians from injury from temporary obstruction in street — constructive notice.

A city cannot be held liable for work done or authorized or required by the Public Service Commission, or for negligence on the part of the Commission or its contractors.

Where a gas pipe had been removed from below the surface of the street by the gas company or a contractor with it, and placed on the surface pursuant to plans made and approved by the engineer of the Public Service Commission, and said pipe extended two or three inches above the level of the curb and was left for several months without protection on either side, and the city had constructive notice of its presence and

condition, it was incumbent upon it under its general duty to keep the surface of the streets in a reasonably safe condition for public travel, if it was not in such condition, to shut off or divert such travel or to place the street in a reasonably safe condition.

In an action for personal injuries resulting from slipping on such pipe, *held*, that the accident was due, not to a dangerous condition of the street which the city should have guarded against, but to the fact that the plaintiff did not exercise proper care, and that the complaint should be dismissed.

Although the pipe had been in such condition for a sufficient length of time to charge the city with constructive notice of its existence, it does not follow that it was chargeable with notice that its presence and condition were a menace to public travel, nor in view of the magnitude of the travel was the fact that one pedestrian had met with an accident sufficient to give the city constructive notice that the street was in a dangerous condition.

SHEARN, J., and CLARKE, P. J., dissented in part, with opinion.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 12th day of July, 1917, upon the verdict of a jury for $800, and also from an order entered in said clerk's office on the 14th day of July, 1917, denying defendant's motion for a new trial made upon the minutes.

*John F. O'Brien* of counsel [*Terence Farley* and *Thomas G. Price* with him on the brief; *William P. Burr, Corporation Counsel*], for the appellant.

*Horace L. Cheyney* of counsel [*Charles A. Hitchcock*, attorney], for the respondent.

LAUGHLIN, J.:

At about half-past seven o'clock on the evening of November 8, 1912, the plaintiff, who resided at No. 62 East One Hundred and Twenty-ninth street, was walking westerly quite fast on the northerly sidewalk of One Hundred and Twenty-fifth street accompanied by a friend, an elderly woman who resided on One Hundred and Twenty-eighth street, on whom she had called and with whom she had been shopping on Third avenue, and while crossing Lexington avenue, in stepping from the carriageway of the avenue to the curb at the northwesterly corner of One Hundred and Twenty-fifth street, she placed her foot on top of a gas pipe which extended along

First Department, May, 1918.        [Vol. 182.

the curb in the gutter and her foot slipped off the pipe towards the curb, throwing her forward onto the sidewalk and inflicting the injuries for which she has recovered. The amount of the verdict is not questioned.

The plaintiff testified that she saw the pipe when about one-half a foot or three or four feet from it and just before stepping upon it, and that it appeared to extend from four to six inches above the level of the curb adjacent thereto, and that there was no cement or other filling in the space between it and the curb, but that outside of and along the pipe there were boards, and that she had never passed over the pipe before. Her testimony also tends to show that as she was short she could not conveniently step over the pipe onto the curb and that she did not observe that the pipe was smooth or slippery, or that it would be dangerous to step upon it until the accident occurred. Other testimony on behalf of the plaintiff corroborates her version of the accident and tends to show that the pipe extended from two to three inches above the level of the curb and had been in the same condition for some months, and that another pedestrian, who had passed over it more than one hundred times, met with a similar accident on the evening of October sixteenth or seventeenth, prior to the accident to the plaintiff, while he was also walking westerly. The uncontroverted evidence shows that One Hundred and Twenty-fifth street is the principal crosstown street in the upper part of the city and that it was extensively traveled, and that this pipe had been thereby worn smooth and slippery and glittered like and had the appearance of nickel.

On the part of the defendant it was shown that a subway was under construction along Lexington avenue under One Hundred and Twenty-fifth street by the Bradley Construction Company pursuant to a contract with the Public Service Commission, and that this gas pipe, which furnished illuminating gas, extended along the curb around the corner westerly on One Hundred and Twenty-fifth street and northerly on Lexington avenue, and that it had been removed from below the surface of the street by the gas company or a contractor with it, and placed in the gutter on the surface of the street pursuant to plans made and approved by the

engineer of said Commission. There is testimony in behalf of the defendant that the pipe only extended about one inch above the curb, and that the space between it and the curb was filled in with cement extending back a few feet on the sidewalk. The testimony of an inspector employed by the Commission shows that the pipe was in the same position in the month of July, or about four months prior to the accident.

Upon no theory can the city be held liable for the work done or authorized or required by the Public Service Commission or for negligence on the part of the Commission or its contractors. (*Carpenter* v. *City of New York*, 115 App. Div. 552; *Murphy* v. *City of New York*, 128 id. 463; *Smyth* v. *City of New York*, 203 N. Y. 106; *Schmidt* v. *City of New York*, 179 App. Div. 667; *Schnaier* v. *Bradley Contracting Co.*, 181 id. 538; *Haefelin* v. *McDonald*, 96 id. 213.) The jury were, I think, warranted by the evidence in finding that the pipe extended some two or three inches above the level of the curb, that it was left for this long period of time without protection on either side by filling, and that it had been worn smooth so that in stepping upon it at the time of the accident there was danger that one's foot might slip and that the city had constructive notice of its presence and condition.

It is contended broadly in behalf of the city that the pipe having been placed as it was pursuant to a contract with the Public Service Commission, no duty devolved upon it with respect thereto. I am unable to agree with that contention. No other work was done or so far as appears was to be done on the surface of the street at this point pursuant to the contract with the Public Service Commission. Notwithstanding the placing of the pipe in this position by the authority of the Public Service Commission, I am of opinion that it became incumbent on the city, on notice actual or constructive, under its general duty to keep the surface of the streets in a reasonably safe condition for public travel, if it was not in such condition, to shut off or divert public travel at this point or to place the street in a reasonably safe condition. This court, in *Schmidt* v. *City of New York* (*supra*), recognized the existence of such duty under somewhat similar circumstances. (See, also, *Dougherty* v. *City of New York*, 146 App. Div. 727; *Vaccarini*

v. *City of New York*, 54 Misc. Rep. 600.)   If I am right in this view of the law, the point remaining for decision is whether on the evidence a question of fact was presented as to whether the defendant discharged its duty.   In deciding that point it is to be borne in mind that this was a *temporary* obstruction and that the traveling public and the plaintiff according to her own testimony had notice by the presence of the pipe and the boards along it on the street side that it was a temporary condition incident to some public improvement.   The pipe had been there a sufficient length of time to charge the city with constructive notice of its existence there; but it does not follow that the city was chargeable with notice that its presence and condition were a *menace* to public travel, nor in view of the magnitude of the travel was the fact that one pedestrian out of a multitude had met with an accident there sufficient to give the city constructive notice that the street was in a *dangerous* condition.   Assuming that the city had notice of the position in which the pipe was placed, I think it had the right to assume, in the absence of notice of accidents, that the street could be used for public travel in safety by those exercising ordinary care.   This accident was due, I think, not to a dangerous condition of the street which the city should have guarded against, but to the fact that the plaintiff did not exercise the care which she was called upon to exercise in attempting to rest her weight on the rounded surface of this pipe.   I think it would be imposing too great a duty upon the city to hold it responsible for this accident in view of the fact that it was not responsible for the obstruction, which was temporary.

It follows, therefore, that the judgment and order appealed from and the implied findings of the jury that the plaintiff was free from negligence and that the defendant was guilty of negligence should be reversed, with costs, and the complaint dismissed, with costs, on defendant's motion at the close of the evidence.

SMITH and PAGE, JJ., concurred.

SHEARN, J.:

I concur in the result, but I do not agree with the view of Mr. Justice LAUGHLIN that the city of New York was under

a duty to take any affirmative action to safeguard the traveling public from any danger of possible injury that might follow as a result of pedestrians stepping upon the smooth and slippery surface of the gas main. As a necessary incident to the construction of the subway, this gas main of the Consolidated Gas Company was temporarily removed from the sub-surface and laid upon the surface of the pavement so as to permit the gas company to carry on its business without interfering with the subway construction. The management and direction of subway construction is solely in the hands of the Public Service Commission. The Commission required and authorized the relocation of the gas main, acting upon the judgment of its engineers. The city had nothing whatever to do with locating or placing the main. It could neither control the location nor prevent its being located in the place and in the manner required by the Commission. The gas main was not a nuisance, for it was located and maintained under competent authorization. It was not a part of the street or of the sidewalk and was not maintained by the city. It belonged to the gas company and was maintained by it for its own business purposes. If the gas main, after being properly located, became dangerous through being rendered smooth and slippery, it was the duty of the gas company, which maintained the main for its own purposes, to put it into a reasonably safe condition. There is no obligation on the part of the city to maintain the pipes of the gas company in a safe condition. The case of *Schmidt* v. *City of New York* (179 App. Div. 667) does not seem to me to be in point, for what was there said had to do with the condition of planking which constituted the very surface of the street, and which was placed for the purpose of public travel and not, as here, for the purpose of enabling a private corporation to carry on its business.

Clarke, P. J., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs.